Robert W. KOHLHEIM, et al.,
Plaintiffs–Appellants,
Cross–Appellees,

v.

GLYNN COUNTY, GEORGIA, a political subdivision of the State of Georgia, Defendant–Appellee, Cross–Appellant.

No. 89–8386.

United States Court of Appeals,
Eleventh Circuit.

Oct. 15, 1990.

As Amended Dec. 11, 1990.

**1474**

Fletcher Farrington, Farrington & Abbot, Savannah, Ga., Amanda F. Williams, Brunswick, Ga., for plaintiffs-appellants, cross-appellees.

Thomas J. Lee, S. Wesley Woolf, St. Simons Island, Ga., for defendant-appellee, cross-appellant.

Before COX, Circuit Judge, HILL * and SMITH **, Senior Circuit Judges.

EDWARD S. SMITH, Senior Circuit Judge:

This action was instituted by 71 presently or formerly employed firefighters and emergency medical technicians[1] against Glynn County, Georgia, to recover back pay, liquidated damages, attorney fees and costs for the county's alleged failure to pay certain regular time and overtime wages in violation of applicable provisions of the Fair Labor Standards Act (FLSA), 29 U.S.C. § 207. The parties filed cross motions for summary judgment on several FLSA issues and submitted briefs concerning the proper construction of the Glynn County personnel ordinance. After ruling on the summary judgment motions and construing the personnel ordinance the district court certified the questions decided to this court under 28 U.S.C. § 1292(b).

First, we hold that the firefighters' mealtimes must be included as hours worked for overtime purposes. Second, the court finds that the county personnel ordinance establishes an annual salary for the firefighters; the portion of this salary applicable to a work period must be divided by the number of hours actually worked to determine the regular rate for computing overtime under FLSA regulations. Third, we find that the county is entitled to set off all previously paid overtime premiums against any compensation found to be due and owing under this standard.

### Background

In *Garcia v. San Antonio Metro. Transit Auth.* the Supreme Court found the FLSA applicable to states and municipalities.[2] Under subsequent legislation Congress made April 15, 1986 the effective date of the FLSA's application to state and local governments.[3] Glynn County updated its employment practices in 1985 to conform to the provisions of the new legislation, but in the present case the firefighters contend that the county has been in violation of the overtime pay requirements of the FLSA since that date.

The facts pertinent to this appeal are as follows: Prior to 1985 firefighters and emergency medical technicians in Glynn County worked 24 hour "tours of duty" separated by 48 hours of off-duty time. Each employee was expected to work a minimum of 122 tours per year, which when multiplied by the number of hours in each tour (24), yielded a total of 2928 yearly work hours. To ensure compliance with the FLSA the county initially effectuated a change in the manner in which it accounted for compensated hours by increasing the

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Edward S. Smith, Senior U.S. Circuit Judge for the Federal Circuit, sitting by designation.

1. The complaint originally included 71 plaintiffs, but three failed to answer discovery and were dismissed from the case; 68 remain as parties in the present action.

2. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985), *overruling National League of Cities v. Usery*, 426 U.S. 833, 96 S.Ct. 2465, 49 L.Ed.2d 245 (1976).

3. Pub.L. 99–150, 99 Stat. 787 (1985); 29 U.S.C. § 203(d) (1988).

tour of duty to 24.2 hours.[4] Each firefighter was still required to work a 24.2 hour tour of duty every three days—one tour of duty followed by two days off, so the changes ultimately affected only the methods for computing regular and overtime compensation due. Each firefighter's regular weekly paycheck was unchanged by the new wage and hour system.

This schedule resulted in a six week cycle with: (1) two bi-weekly periods, each with five scheduled tours of duty (121 total compensated hours); and (2) one bi-weekly period with four scheduled tours of duty (96.8 total compensated hours). The straight time pay for each regularly scheduled tour was calculated with reference to an annual pay rate contained in a graded pay scale adopted in 1981 under the guidelines of the county's personnel ordinance. On the scale each grade and step carries a published rate of pay stated in hourly, weekly, monthly, and annual terms. The weekly straight time pay for each firefighter is calculated by simply dividing the reported annual rate for his/her particular grade by 52.

The calculation of total "hours worked" for reporting accumulated overtime operates on a different scale from that described above. For the purpose of calculating accumulated overtime hours only, three meal time hours were excluded from each 24.2 hour shift, so each tour of duty comprised 21.2 reported hours. So, in bi-weekly periods covering five scheduled tours of duty, 15 hours were excluded from the 121 compensated hours, which resulted in 106 "hours worked" for the purpose of calculating overtime. Likewise, in bi-weekly periods covering four scheduled tours, 12 hours were excluded from the 96.8 compensated hours, which resulted in 84.8 "hours worked". The FLSA mandates the payment of 1½ times the "regular rate" of pay for overtime, and the method of calculation for this rate is set forth in the regulations.

However, the county instead chose to compensate the firefighters for overtime at 1½ times an artificial hourly rate ("2928 rate"), which was determined by dividing the annual salary from the pay scale by the number of yearly compensated hours, 2928.

On June 23, 1988, the plaintiffs brought suit in federal district court against the county under the FLSA. The complaint alleged in substance that the defendant county had unlawfully excluded mealtimes in calculating the "hours worked" for overtime purposes, and sought to recover back pay, liquidated damages, attorney fees and costs. The plaintiffs later amended their complaint and added a related claim grounded in Georgia state law, which asserted that the defendants had failed to pay them the hourly rate of pay specified in the county personnel ordinance.

After some discovery, on January 31, 1989 plaintiffs moved for partial summary judgment, presenting the issue whether the county's practice of excluding three hours of mealtime from the number of "hours worked" for overtime purposes violated the FLSA. The district court, Alaimo, J., granted the motion and held that since firefighters remain on the employer's premises subject to call for emergencies during mealtime, such mealtime must be included as "hours worked" for the purpose of calculating overtime.[5]

Later the defendant county moved for summary judgment on all the remaining FLSA issues. The motion did not specifically mention the state law contract claim arising out of the county personnel ordinance, nor was a statement included that concisely set forth the facts on that claim asserted to be undisputed by the county as moving party.[6] Plaintiffs responded by filing a cross motion for summary judgment on the grounds that the county had improperly calculated the "regular rate" of salary

---

4. The tour of duty was originally increased to 24.5 hours, but was thereafter reduced to the present 24.2 hour level.

5. *See* 29 C.F.R. § 553.223(c) (1989).

6. Under Southern District of Georgia rules, a party moving for summary judgment must file a concise statement of facts as to which it contends there is no genuine issue for trial. S.D. Ga.R. § 1, Rule 6.6.

compensation under the FLSA.[7]  The case was then assigned to Judge Vining of the Northern District of Georgia.  After the assignment defendants filed a series of three supplemental briefs in support of the motion for summary judgment on the state law contract issue.  Plaintiffs responded to the issues presented in each brief.

On April 3, 1989 Judge Vining entered an order denying defendant's summary judgment motion on the majority of the FLSA issues on the grounds that material facts remained in dispute.  On the plaintiffs' cross motion for summary judgment the court held for defendants and determined that the "regular rate" of compensation was to be calculated by dividing the number of hours actually worked in a work period into the amount of pay received during that work period.  On the contract claim the court essentially adopted defendant's position and held that since the firefighters were salaried employees, the amount of pay received was to be calculated based on an hourly rate derived from the annual salary set forth in the personnel ordinance.  The court also agreed that the county was entitled to "credit" for previously paid overtime premiums which were in excess of 1½ times the calculated regular rate.

On April 4, 1989, the district court certified its orders of January 31, 1988 and April 3, 1989 for interlocutory appeal under 28 U.S.C. § 1292(b).  This court granted the petition for permission to appeal on May 18, 1989.  On appeal each party contests those portions of the district court's orders adverse to their respective interests.

### Standard of Review

Under Fed.R.Civ.P. 56(c), summary judgment is only appropriate when "there is no genuine issue as to any material fact and ... the moving party is entitled to judgment as a matter of law."[8]  In evaluating a summary judgment motion, the burden of establishing the absence of a material dispute of fact is borne by the moving party; the reviewing court must view all evidence in the light most favorable to the non-movant and resolve all reasonable doubts about the facts in favor of the non-movant.[9]

When a district court certifies orders for interlocutory appeal under 28 U.S.C. § 1292(b), all questions material to those particular orders are properly before the court of appeals.[10]

### I.  Meal Time Exclusion

The FLSA generally requires an employer to pay overtime compensation to employees for all "hours worked" over 40 in a work week; however, 29 U.S.C. § 207(k) contains special requirements applicable only to public policemen and firefighters.  Firefighters are not entitled to premium compensation until 212 "hours worked" accrue in a 28 day period.[11]  The special provisions applicable to public firefighters under § 207(k) follow from their special status as "tour of duty" employees.  According to administrative regulations interpreting the FLSA the term tour of duty is a unique concept applicable only to public employees covered under § 207(k).[12]  A tour of duty is "the period of time during which an employee is considered to be 'on duty' for the purposes of determining compensable hours."[13]

Although the general rules on compensable hours of work set forth in 29 C.F.R. Part 785 are applicable to tour of duty employees, special rules for meal time ap-

---

7.  *See* 29 U.S.C. § 207(a), (e).

8.  *United States v. Fleet Factors Corp.,* 901 F.2d 1550, 1553 (11th Cir.1990).

9.  *Id.*

10.  *Fleet Factors Corp.,* 901 F.2d at 1554 n. 2; *citing United States v. Stanley,* 483 U.S. 669, 676–77, 107 S.Ct. 3054, 3059–60, 97 L.Ed.2d 550 (1987).

11.  A similar ratio of hours worked to consecutive work days applies to determine when overtime compensation begins to accrue in cases where the work period varies from the 28 day statutory standard.

12.  29 C.F.R. § 553.220(a) (1989).

13.  *Id.*

ply in the case of firefighters.[14] The regulations establish a special overtime standard keyed to the tour of duty concept: "In the case of ... firefighters who are on a tour of duty of more than 24 hours, meal time may be excluded from compensable hours provided that the tests in §§ 785.19 and 785.22 of this title are met."[15] In its order issued December 31, 1988, the district court found that appellants' tour of duty consisted of a period in excess of 24 hours (24.2 hours). This finding is not questioned on appeal; so, the tests of § 785.19, and, if necessary, § 785.22, must be examined to determine if the firefighters' mealtimes are to be excluded from compensable hours.

Section 785.19 provides that bona fide meal periods are not worktime.[16] In order to be considered a bona fide meal period, however, the regulations require complete relief from duty: "The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating."[17] Thus, the essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal. The district court ruled that the firefighters were not completely relieved of their duties during mealtimes and we find no error in this conclusion.[18] During meal times the firefighters were required to remain at the station and were subject to emergency calls. The record makes clear that the firefighters were subject to significant affirmative responsibilities during these periods. The mealtime restrictions benefit the county by ensuring maintenance of an available pool of competent firefighters for immediate response to emergency situations. The firefighters are subject to real limitations on their freedom during mealtime which inure to the benefit of the county; accordingly, the three mealtime periods are compensable under FLSA regulations for overtime purposes.[19]

As noted above, § 553.223(d) gives an employer the option of excluding meal times from compensable hours if the employees work a tour of duty in excess of 24 hours. However, the plain language of § 553.223(d) makes the mealtime exclusion option available only if the rules of § 785.19(a) are satisfied. The county argues that since the tour of duty is necessarily and by definition comprised entirely of "on duty" time, the application of § 785.19(a) in effect takes away the mealtime exclusion option granted to the employer by § 553.223(d). According to the county, the "exception" contained in § 785 entirely swallows the rule of § 553.223(d). We disagree. The tour of duty concept should not relieve the employer from its responsibility of compensating employees for worktime. It is undisputed that the county received substantial benefits from the firefighters' activities during the mealtime periods, and such activities create a right of compensation under the FLSA. The regulations set forth in § 785.19(a) offer a useful and fair standard by which to determine whether a meal period should be considered worktime under the FLSA, and should not be disregarded in tour of duty work arrangements.[20]

**14.** 29 C.F.R. § 553.221(a) (1989).

**15.** 29 C.F.R. § 553.223(d) (1989).

**16.** 29 C.F.R. § 785.19(a) (1989). ·

**17.** *Id.*

**18.** Fed.R.Civ.P. 52(a).

**19.** The county argues that the firefighters' presence on the station premises during mealtimes, in itself, does not establish a right to compensation under FLSA regulations. *See* 29 C.F.R. § 785.19(b). We agree that the geographic location of the break is not dispositive; what matters in meal period cases is whether the employ-ees are subject to real limitations on their personal freedom which inure to the benefit of their employer. *See Wahl v. City of Wichita,* 725 F.Supp. 1133, 1138–1144 (D.Kan.1989), and cases cited therein.

**20.** In *Skidmore v. Swift,* 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), the Supreme Court held that while administrative interpretations of the FLSA are not binding on the courts, they nonetheless serve as "a body of experience and informed judgment to which courts and litigants may properly resort for guidance." The FLSA regulations are entitled to great weight and should not be lightly set aside, *Mitchell v. Greinetz,* 235 F.2d 621 (10th Cir.

## II. *The Contract Claim*

### A.

■ The first question to be resolved on this issue is whether Glynn County's motion for summary judgment on the contract claim was properly before the district court. On January 17, 1989 the County filed a proper motion for summary judgment on the FLSA issues. The motion included an extensive appendix and statement of facts as required by local rules, as well as an official notice to appellants that a summary judgment had been filed. After the case had been assigned to Judge Vining, the county filed a supplemental brief on February 21 in support of the original motion. In the brief the county asserted for the first time that it was entitled to summary judgment on the contractual claim based on an implied contract theory. The firefighters responded to the arguments in the supplemental brief and concluded the discussion on the contractual issue in the following manner: "Summary judgment must be denied defendant on this issue." The county filed an additional supplemental brief on March 24 in which it contended for the first time that the contractual issue was controlled by the language of the county personnel ordinance. The firefighters responded to the legal arguments concerning the proper construction of the ordinance and asserted that they, not the county, were entitled to summary judgment on the contractual issue. After Judge Vining granted summary judgment to the county on the contractual issue, the firefighters immediately moved to amend the order on the ground that the county had never actually moved for summary judgment on the contractual issue and had failed to file the required statement of facts pertinent thereto. The coun-

ty noted that appellants responded to each supplemental brief and asserted that its initial statement of facts submitted in the January 17 motion was sufficient to cover the contractual claim. The motion to amend was denied.

The firefighters question the propriety of the district court's action; but, after a careful examination of the record, we find no reversible error in the court's decision to render summary judgment on the contractual claim. As is true of motions generally, a motion for summary judgment should be in writing and specify clearly the grounds on which judgment is sought.[21] However, the court may enter judgment on a ground not mentioned in the motion if the parties have had an adequate opportunity to argue and present evidence on that point and summary judgment otherwise is appropriate.[22] The major concern in cases in which the court decides to enter summary judgment *without a proper Rule 56 motion* is whether the party against whom the judgment will be entered was given sufficient advance notice and an adequate opportunity to demonstrate why summary judgment should not be granted; if such conditions are complied with, no unfairness results from the court's decision to rule on the motion.[23] To conclude otherwise would result in unnecessary trials and would be inconsistent with the principal objective of Rule 56—to expedite the disposition of cases.[24]

In the present case it is clear that the firefighters considered the county's supplemental briefs as documents presenting additional grounds for summary judgment. The firefighters responded to each argument presented in the supplemental briefs; in addition, their responses indicate awareness that the court would consider the con-

1956), so we join the other circuits which have adopted the mealtime exclusion standards of § 785.19 as an appropriate statement of the law. *See Donovan v. Bel–Loc Diner, Inc.* 780 F.2d 1113, 1115 n. 1 (4th Cir.1985); *Mumbower v. Callicott,* 526 F.2d 1183, 1188 (8th Cir.1975); *Brennan v. Elmer's Disposal Ser., Inc.,* 510 F.2d 84, 88 (9th Cir.1975).

**21.** Fed.R.Civ.P. 7(b)(1).

**22.** 10 A. Wright, Miller & Kane, Federal Practice and Procedure: Civil 2d § 2719 (1983).

**23.** *Lindsey v. United States Bureau of Prisons,* 736 F.2d 1462, 1463 (11th Cir.1984) *citing Fountian v. Filson,* 336 U.S. 681, 683, 69 S.Ct. 754, 755, 93 L.Ed. 971 (1949); 10 A. Wright, Miller & Kane at § 2720.

**24.** 10 A. Wright, Miller & Kane at § 2720.

tractual issue along with the FLSA issues under a summary judgment standard. The purpose of Rule 56 notification rules (both federal and local) is to ensure that "the non-moving party will have an opportunity to marshall its resources and ... rebut the motion for summary judgment with every factual and legal argument available."[25] We are satisfied that the firefighters were given such an opportunity; no additional evidence has been presented on the contractual issue that was not before the district court at the time summary judgment was entered. The firefighters cannot be heard to attack the trial court for failure to give notice when their own documents demonstrate knowledge of the standard to be applied.[26] So, while it may have been error for the district court to deviate from the summary judgment notice requirements, under the present facts that error was harmless.[27]

### B.

In its ruling on the contractual issue the district court found that an express contract existed between the county and the firefighters, with terms contained in the county personnel ordinance adopted by the Glynn County Board of Commissioners on July 1, 1977.[28] According to the court, the personnel ordinance establishes that the terms of employment for firefighters are governed by the "Glynn County Personnel Policies" manual, which sets forth the annual salary for each employee. The pay scale also breaks down the annual salary into an hourly wage based on the typical county employee's 40 hour work week. However, county firefighters work a 56 hour week, so when their total hours worked per year are divided into their annual salary, a lower hourly wage results than that paid to other county employees.

The firefighters contend that this variance is a breach of contract.

The salary range allocations in the ordinance list an annual salary for each grade and an hourly wage figure derived therefrom in parentheses. The salary range figures are followed by a list of pay grade allocations which list the annual salary range for each position classification in the county workforce. Thus, the issue is one of contractual interpretation; specifically, according to the personnel ordinance, is the salary for the firefighters expressed in annual or hourly terms?

While the hourly rate calculations introduce some ambiguity into the salary figures, the personnel ordinance when interpreted as a whole indicates that the annual salary is the benchmark for computing compensation for all county employees. The use of an hourly, weekly, or monthly rate may be more convenient, but the starting point for calculating salaries is the annual figure. Nowhere does the contract contain a statement that the hourly wage listed, indeed any wage, is calculated on a 40 hour per week basis.

The firefighters also admit that their weekly pay is simply calculated by dividing the annual salary from the appropriate grade in the personnel ordinance by a factor of 52. Any such course of performance accepted or acquiesced in over a period of time by a party without objection must be given weight in the interpretation of any "ambiguous" terms in the ordinance.[29] So, in light of all circumstances, the district court correctly concluded that the county's practice of expressing annual salaries in hourly terms does not create a contractual obligation for the county to pay that specific hourly wage.

---

**25.** *Milburn v. United States,* 734 F.2d 762, 766 (11th Cir.1984).

**26.** *Cf. Denis v. Liberty Mut. Ins. Co.,* 791 F.2d 846, 850 (11th Cir.1986) (failure to give plaintiffs 10 days notice that defendants' motion to dismiss was converted to motion for summary judgment was harmless error where plaintiffs were aware that summary judgment standard would be applied).

**27.** *Id., citing Property Management & Inv., Inc. v. Lewis,* 752 F.2d 599, 605 (11th Cir.1985).

**28.** *See Adams v. City of Atlanta,* 179 Ga.App. 719, 347 S.E.2d 647 (1986), *rev'd on other grounds,* 256 Ga. 620, 351 S.E.2d 444 (1987).

**29.** Restatement (Second) of Contracts § 202(4) (1981).

The firefighters next argue that the district court's construction of the contract violates the FLSA and so contravenes the "public policy of the United States". This claim must fail, for nothing in the FLSA requires an employer to compensate employers on an hourly basis; their earnings may be determined on a salary basis under FLSA regulations.[30] The regulations only require that the overtime compensation due employees be computed on the basis of an hourly rate calculated with reference to the stipulated salary figure.[31] The county may have improperly calculated the hourly base rate for overtime compensation due under the FLSA, and the firefighters may be entitled to damages as a result of this error, but such oversight does not invalidate the personnel ordinance on public policy grounds.

Finally, the firefighters assert that genuine issues of material fact remain on the contractual issue, and claim that the district court erred by failing to draw all permissible inferences in their favor. This claim is not well taken, for under Georgia law the construction of a contract is a question of law for the court.[32] Even if the construction of the contract required the court to consider extraneous facts, it is clear from the record that those facts were undisputed by the parties. The district court's summary judgment ruling on the contractual issue was entirely proper.[33]

### III. The Regular Rate of Compensation for Overtime

The general overtime pay standard of the FLSA requires that overtime must be paid at a rate not less than 1½ times the regular rate of employee compensation.[34] As noted above, earnings under the FLSA may be expressed on a salary basis in an employment contract, but without exception overtime compensation must be calculated based upon the hourly rate derived from such salary.[35] "The regular hourly rate of pay of an employee is determined by dividing the total remuneration for employment in any [work period] [36] by the total number of hours actually worked by him in that [work period] for which such compensation was paid." [37] The following formula is used to calculate the regular rate:

$$\text{regular rate} = \frac{\text{salary for work period}}{\text{total hours worked in work period}}$$

The salary for the two week work period is calculated by dividing the annual salary from the personnel ordinance by a factor of controversy in the present case centers around the proper figure to use for total hours worked.

Originally, due to the county's practice of not including mealtimes in hours worked for calculating accrued overtime, a discrepancy existed between the number of hours compensated per work period (121) and the hours worked for calculating accrued overtime (106). In this case we decided that the county's mealtime exclusion policy is contrary to FLSA regulations, so the discrepancy will not exist in the future. Under the present work arrangement compensated hours and hours worked for overtime purposes are now the same for each work period. In any event, as noted by the district court, FLSA regulations require that, for salaried employees, the number of hours worked for use in the divisor of the regular rate formula is in fact 121, the number of hours actually spent on the job.[38]

---

**30.** 29 C.F.R. § 778.109 (1989).

**31.** *Id.*

**32.** Ga.Code Ann. § 13–2–1 (1982).

**33.** Construction and interpretation of a written contract is a matter of law for the court and, therefore, is properly subject to disposition by summary judgment. *Sims' Crane Ser., Inc. v. Reliance Ins. Co.,* 514 F.Supp. 1033 (S.D.Ga. 1981), *aff'd,* 667 F.2d 30 (11th Cir.1982).

**34.** 29 U.S.C. § 207(a)(1) (1988).

**35.** 29 C.F.R. § 778.109 (1989).

**36.** The regulations normally speak in terms of a work week, but for firefighters the term "work period" is used, which allows for an irregular work cycle. 29 C.F.R. § 553.224(a) (1989).

**37.** 29 C.F.R. § 778.109 (1989).

**38.** 29 C.F.R. § 778.114(b) (1989).

## IV. Credit or Set–Off for Excess Overtime Premiums

■ Prior to the effective date of the FLSA's application to state and local governments, Glynn County paid overtime premiums to its employees. However, after the effective date of the 1985 amendments, the county continued its pre-FLSA practice of compensating overtime at a rate 1½ times the "2928 rate".[39] In some work periods the "2928 rate" was smaller than the FLSA "regular rate" described above, so the computed overtime premium paid during such periods was also insufficient. The county admits liability for the compensation shortfall during these periods. But, during some work periods, the "2928 rate" was greater than the regular rate, so the county seeks "credit" for excessive overtime premiums paid during these periods. On the issue of entitlement to credit for excess overtime compensation the district court concluded: "if at trial the defendant can establish that the premiums it paid for holiday work, call back work, and consecutive shifts was *equal to or greater than one and one half times the regular rate* ... the defendant will be entitled to credit for such overtime premiums paid." (emphasis added). According to the county, the district court's decision effectively denies it credit for overtime premiums paid during work periods when the "2928 rate" fell below the regular rate.

The FLSA mandates that "extra" compensation paid by an employer be credited toward overtime compensation due.[40] While we question whether the district court's language has the meaning urged by the county, to clear up any confusion we hold that the county should be allowed to set-off *all* previously paid overtime premiums, not just those equal to or greater than 1½ times the regular rate, against overtime compensation found to be due and owing during the damages phase of the trial.

## Conclusion

The FLSA, enacted in 1938, established nationwide minimum wage and maximum hourly standards in an effort to ensure the maintenance of the minimum standard of living necessary for the health, efficiency, and general well being of all workers. The 1985 amendments to the Act provided rules for overtime compensatory time for the employees of state and local governments. The tour of duty concept established in the FLSA regulations allows the employer great scheduling flexibility and ensures that public safety employees will be available to respond quickly to emergency situations. However, care must be taken to ensure that such employees are fully compensated for their time on the job.

In the present case the firefighters were not relieved from duty during their mealtimes, so the FLSA requires that the county provide compensation for such periods. The mealtimes must be included as "hours worked" for overtime purposes. The district court's ruling granting summary judgment to the firefighters on this point is affirmed.

It is also clear that the personnel ordinance establishes an annual salary for the firefighters, so the compensation due in a work period must be computed based on this amount. The regular rate as defined in the FLSA must be calculated by dividing the total compensation due in a work period by the number of hours actually worked in that period. Therefore, the district court's grant of summary judgment to the county on these issues is affirmed.

Finally, under the Act the county is entitled to set off all previously paid overtime premiums, not just those of at least 1½ times the regular rate, against any overtime compensation found to be due and owing during the damages phase of the trial. If the district court's order is indeed inconsistent with this standard, the order should be clarified to ensure that Glynn

---

**39.** As discussed above, the "2928 rate" is an artificial hourly rate which is determined by dividing the annual salary from the pay scale in the personnel ordinance by the number of yearly compensated hours, 2928.

**40.** 29 U.S.C. § 207(h) (1988).

County receives proper credit for previous payments.

The judgments of the district court are affirmed in part and reversed in part, and the case is remanded for trial consistent with this opinion.

AFFIRMED in part, REVERSED in part and REMANDED.