Michael ABBEY, Charles Barnum, Joe Berkimeier, Eric Bernhardt, Robert Brown, Mike Beyerstedt, Chris Burkey, Len Canterbury, Tim Carpenter, Steven Childs, Jeff Collver, James Conant, Eric Copeland, Gary Cranna, Jon Crawford, Mike Currigan, Rick Curtis, Tim Curtis, Ron Dunfield, Scott Elliot, Robert Esham, Kevin Gregg, Ben Hammond, Robert Haskins, Daniel Herr, James Holzworth, Mark Jamieson, Dale Jordon, Scott Krebill, William Lackey, John Leicht, Tom Leinhart, Paul Long, Mike Longenecker, Tom Loveberry, Walt Luck, Gerard Mandreger, Steven Miller, Doug Millican, Larry Parsons, Lee

Ramson, Dean Richardson, Agustin Ro-
drieguez, Jr., Steven Rudolph, Brian
Thurston, Wilbur Uhl, David Van
Stempvoort, James Watkins, J.D. Wat-
son, Richard Wilson, Jr., David Wooden
and Robert Woodman, Plaintiffs,

v.

CITY OF JACKSON, a municipal
corporation, Defendant.

No. 94–70552.

United States District Court,
E.D. Michigan,
Southern Division.

April 10, 1995.

John R. Runyan, Ronald R. Helveston, Sachs, Waldman, O'Hare, Helveston, Hodges & Barnes, P.C., Detroit, MI, for plaintiffs.

Gary P. King, Bruce M. Bagdady, Keller, Thoma, Schwarze, Schwarze, DuBay & Katz, P.C., Detroit, MI, for defendants.

## OPINION AND ORDER

FEIKENS, District Judge.

### I. Background

#### A. Facts

This opinion addresses summary judgment matters. The following facts are not in dispute. Defendant maintains a fire department (Department) and is an employer subject to the Fair Labor Standards Act of 1938 (FLSA), as amended, 29 U.S.C. § 201 et seq. Plaintiffs are fire fighters employed by the Department. Eleven of the fifty-two plaintiffs are captains.

The relevant rates of pay for plaintiffs were reached after intense negotiations by the City of Jackson and the International Association of Fire Fighters, Local 1306, plaintiffs' union. These rates of pay are memorialized in the July 1, 1988—June 30, 1991 collective bargaining agreement (CBA).[1] Under the CBA plaintiffs were paid less than one and one-half (1½) times their regular rate of pay during "minimum manning" shifts. Minimum manning shifts are shifts in which the Department is required to call in off-duty fire fighters to reach the minimum number of fire fighters that must be on duty according to the CBA. The rate of pay (ROP) for minimum manning shifts was arrived at using the following equation:

> Once the rate of the four (4) year firefighter (sic) has been ascertained for July, 1 1982, that rate shall be divided by 2080 hours which shall determine the hourly rate. That hourly rate shall be divided by 1.5 and that number shall be multiplied by 24 hours.

Appendix B of the CBA. This calculation makes the rate $16.85 per hour. This ROP is greater than plaintiffs' ROP for normal

---

1. The parties followed the terms of the 1988–1991 CBA during negotiations for a new collective bargaining agreement. Therefore, even though plaintiffs are claiming damages from 1991–1993, their claim is premised on provisions of the 1988–1991 CBA.

working hours, but less than the ROP received during overtime hours. Plaintiffs received this ROP for minimum manning shifts whether or not they worked in excess of 212 hours in a work period. *See* 29 C.F.R. § 553.230.[2]

Plaintiffs were paid more than 1½ times their regular ROP for overtime hours worked under § 6.4 of the CBA. Overtime pay is required whenever a fire fighter works more than 212 hours in a work period. § 6.4 reads:

> All employees covered by this Agreement shall be paid overtime pay for all authorized overtime work at the rate of time and one-half (1½) in cash. For purposes of the Agreement, the employee's hourly rate of pay shall be the annual salary for each employee divided by 2080 hours.

(Defendant's exhibit A). Due to the fact that plaintiffs actually work 2,912 hours in a year the use of 2,080 hours as a divisor means that an artificially high hourly rate of pay is used when calculating overtime.[3]

### B. Contentions

Plaintiffs filed this action February 14, 1994 to recover compensation for minimum manning shifts worked, during work periods in which they worked over 212 hours, from February 14, 1991 to December 16, 1993. Defendant concedes that, according to FLSA, plaintiffs deserved to be paid at the overtime rate during these periods. Defendant moves for summary judgment on the following three grounds, however: (1) defendant is entitled to receive credit under FLSA for overtime compensation it paid to a plaintiff that was above the amount mandated by FLSA, and for payments made to a plaintiff when he was called in to work a minimum manning shift during a work period in which he worked less than 212 hours; (2) plaintiffs who are captains are "bona fide executives", and exempt from receiving benefits under FLSA; (3) defendant's violation of FLSA was not willful; therefore the statute of limitations is two years. Plaintiffs move for partial summary judgment as to defendant's liability under FLSA and as to whether the violations were wilful.

### C. Statutory Background

■ The commands of FLSA override a collective bargaining agreement. *Martino v. Mich. Window Cleaning Co.,* 327 U.S. 173, 178, 66 S.Ct. 379, 381, 90 L.Ed. 603. *Id.* FLSA demands that employers pay a nonexempt employee not less than one and one-half (1½) times the regular rate at which he is employed. 29 U.S.C. § 207(a). The term regular rate includes all renumeration received by the employee for his employment, except certain overtime pay for work per-

2. Generally, an employer must pay overtime for any hours worked over forty in a work week; however, the parties follow 29 U.S.C. § 207(k) because it recognizes the unique work schedules of fire fighters. Under this provision plaintiffs are not entitled to overtime compensation until 212 "hours worked" accrue in a 28 day period.

3. The following example is instructive:
Assume an average fire fighter earns $30,000 per year. *See* 29 C.F.R. § 778.109 (allows employers to compensate employees using a base rate, but the regular wage and overtime rates must be computed on an hourly basis).
  1) According to § 207(k) of FLSA a fire fighter's normal work period is 212 hours. If a fire fighter works more than 212 hours in a work period, he must be paid overtime.
  2) There are roughly thirteen and one-half work periods per year. So, a fire fighter works 2,912 non-overtime hours per year.
  3) A fire fighter's basic hourly ROP is $10.30 /hr. ($30,000 /yr / 2,912 hrs).
  4) A fire fighter's "basic" overtime ROP using these figures is $15.45 /hr. ($10.30 /hr × 1.5).

5) § 6.4 of the CBA uses 2,080 hours to determine a fire fighter's hourly ROP for overtime purposes, instead of the 2,912 hours actually worked.
6) By using an artificial 2,080 hours worked, a fire fighter's hourly ROP, for overtime purposes, is $14.42 /hr. ($30,000 /yr / 2,080 hrs/ yr).
7) So, under the CBA, a fire fighter's overtime ROP is $21.63 /hr. ($14.42 /hr × 1.5).
8) The minimum manning ROP is $16.85 /hr.
9) The following conclusions can be gleaned from these facts:
A) Defendant paid a fire fighter $5.98 more during overtime hours than a fire fighter's basic overtime ROP. ($21.63 − $15.45);
B) Defendant paid a fire fighter $4.78 more for overtime worked than it did for minimum manning hours worked. ($21.63 /hr − $16.85/ hr);
C) Defendant paid a fire fighter $6.55 more for minimum manning shifts than it paid a fire fighter during his normal working hours. ($16.85 − $10.30).

formed in excess of the typical workweek, on weekends or holidays. *Alexander v. United State*, 32 F.3d 1571, 1575 (Fed.Cir.1994); 29 U.S.C. § 207(e)(5–7). Pay that is not included in the regular rate can be used to offset an employer's overtime obligations. 29 U.S.C. § 207(h). The relevant offset or credit provision in this case is 29 U.S.C. § 207(e)(5). Subsection (e)(5) states:

> Extra compensation provided by a premium rate paid for certain hours worked by the employee in any day or workweek because such hours are hours worked in excess of eight in a day or in excess of the maximum workweek applicable to such employee under subsection (a) of this section or in excess of the employee's normal working hours, as the case may be.

*Id.*[4]

Thus, it is beyond dispute that FLSA establishes a minimum rate of pay that an employer must pay an employee for overtime hours worked and that some types of pay can be used to offset an employer's overtime obligations.

## II. *Analysis*

At issue is defendant's assertion that it deserves credit for excessive compensation given for overtime and for minimum manning hours in which plaintiffs did not work more than 212 hours.

4. Defendant also argues that 29 U.S.C. § 207(e)(7) is a basis for allowing defendant to claim an offset. This is incorrect. § 207(e)(7) is a "clock overtime" provision which addresses premium compensation that is based on the time of day in which work is performed, irrespective of the number of hours worked. Usually this premium compensation is given due to the undesirability of certain hours or shifts. 29 C.F.R. § 778.204; *Brock v. Wilamowsky*, 833 F.2d 11 (2d Cir.1987). To apply to a facts situation the parties must recognize an "established" work day for the relevant industry or business. *Brock*, 833 F.2d at 16. Defendant attempts to squeeze the present facts into § 207(e)(7) by arguing that the parties established that overtime and minimum manning hours were outside the established work day for individual employees. This simply restates the fact that overtime and minimum manning hours were additional hours worked, but does not establish that overtime and minimum manning shifts constituted hours worked outside a period that all parties agreed was the established work day for fire fighters. If

## A. Premium Payments

■ Overtime payments in § 6.4 of the CBA constitute "premium payments" under FLSA § 207(e)(5). The relevant federal regulation requires that if an employment contract provides for compensation greater than 1½ times the base rate, and the employee's receipt of the extra compensation is contingent upon the employee's having worked in excess of the regular number of hours in the work week, the "extra premium compensation paid for excess hours is excludable from the regular rate under § 7(e)(5) ...". 29 C.F.R. § 778.202.[5] In this case, defendant is compensating plaintiffs under an employment contract, the CBA, at a rate greater than 1½ times the regular rate. This method of payment is contingent upon an employee working in excess of 212 hours in a pay period, i.e., overtime. Thus, CBA § 6.4 payments fit neatly within the statutory framework of FLSA according to the Code of Federal Regulations.[6]

This interpretation is consistent with Administrative Letter Rulings issued by the Department of Labor, Wages and Hours Division (Department of Labor). In one such ruling the Department of Labor said that where fire fighters were paid for certain overtime periods at a rate that was calculated using a higher number of hours worked than regular overtime (56 hours per week instead of 40) the rate constituted premium

I were to accept defendant's interpretation, either § 207(e)(5) or § 207(e)(7) would be superfluous.

5. 29 C.F.R. § 553.233 provides that the rules set forth in 29 C.F.R. Part 778 are applicable to employees within 29 U.S.C. § 207(k).

6. 29 C.F.R. § 778.4 states:

> The interpretations of the law contained in this part 778 are official interpretations which may be relied upon as provided in section 10 of the Portal to Portal Act of 1947 (61 Stat. 84). 29 U.S.C. § 251–262.
> Also see *Skidmore v. Swift & Company*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), which states:
> [T]he rulings, interpretations and opinions of the Administrator ... [while not controlling] ... constitute a body of experience and informed judgment to which courts and litigants may properly resort for guidance.

pay. Wage & Hours Op. Letter, no number assigned, (December 19, 1988).

The cases interpret FLSA in this manner. In *Kolheim v. Glynn County, Ga.*, 915 F.2d 1473 (11th Cir.1990), the court said that where the county chose to use an artificially high number of hours worked to calculate overtime pay, the county was compensating its employees with premium pay. *Kolheim*, 915 F.2d at 1481. Similarly, in *Alexander* the court held that excess pay received by an employee under a statute other than FLSA is premium pay. *Alexander*, 32 F.3d at 1577. Given this authority it is clear that the compensation paid under § 6.4 constitutes premium pay within the confines of § 207(e)(5).

■ Conversely, minimum manning payments given when a fire fighter works less than 212 hours in a work period are not premium payments. As the defendant's motion indicates, a fire fighter can be called in to work a minimum manning shift when he has worked less than 212 hours in a work period. Therefore, minimum manning payments are not provided to compensate an employee for extra hours worked. Thus, this compensation is not within the plain language of § 207(e)(5).

### B. Proper Method for Applying § 6.4 Credit

■ As shown above § 6.4 compensation meets the definition of a premium payment. Therefore, these payments can be used to offset overtime owed to plaintiffs. 29 U.S.C. § 207(h). Plaintiffs argue that an employer must use credit only in the same work period it incurs a deficiency. Defendant contends that an employer may use accumulated credit to offset all deficiencies. If plaintiffs' view is correct, defendant's opportunity to use any credit is long past. If defendant's view is correct, defendant may offset § 6.4 overtime payments against overtime deficiencies due.

Recent judicial opinions clearly take the position that credits may offset all liability. *Alexander*, 32 F.3d at 1577. ("1931 Act pay [premium pay] is creditable toward *any* overtime compensation due under the FLSA") (emphasis added); *Kolheim*, 915 F.2d at 1481. In Kolheim the court held "that the

county should be allowed to set-off *all* previously paid overtime premiums ... against overtime found to be due and owing during the damages phase of the trial". *Id.*

A United States Court of Appeals for the Fourth Circuit opinion, cited by plaintiffs, takes the opposite point of view. *Roland Electrical Co. v. Black*, 163 F.2d 417 (4th Cir.1947). In *Roland* the court said that an employer must pay overtime "promptly and when due" in order to comport with the FLSA policy of not allowing employers to compromise or settle sums due employees. *Id.* at 421. The import of this case is reduced significantly by the fact that § 207(e)(5) was not added to FLSA until July, 1949, two years after *Roland* was handed down.

No Department of Labor regulations address the present question as it relates to credits for excess hours worked in a work period. There are regulations which address the work week in other contexts. 29 C.F.R. § 778.103 (directs employers to pay overtime due on a weekly basis); 29 C.F.R. § 778.104 (an employer cannot average the number of hours worked over two weeks in order to avoid paying overtime); 29 C.F.R. § 778.202(c) (credits may be given for daily compensation "against the overtime compensation which is due under the statute for hours in excess of 40 in that workweek"). Although these regulations address this question as it relates to payment of overtime and use of credit for the daily overtime scenario it is impossible to tell, from examining the regulations, whether more should be read from the presence of this language in those sections or from its absence in other subdivisions.

Due to the ambiguity of the regulations it is necessary to decide this case without the benefit of a Department of Labor interpretation. Instead, I must examine FLSA provisions and the policies behind FLSA, to decide which argument is of greater weight. I believe defendant's argument has greater weight. Forcing an employer, who has given a premium rate of pay for overtime, to forego the receipt of credit and to pay additional overtime punishes the employer without regard to whether it was attempting to avoid

its obligation to adequately compensate employees for extra hours worked. Plaintiffs have not pointed to any regulations, statutes or current cases, which state that there is a congressional will to penalize an employer that inadvertently fails to follow FLSA by, in effect, assessing civil money damages beyond those enunciated in 29 U.S.C. § 216(b). Conversely, there is a clear congressional intent to allow an employer to offset premium rates of pay against overtime owed. 29 U.S.C. § 207(h). If I were to follow plaintiffs' reasoning, plaintiffs would receive a windfall and the purposes and goals of the statute would not be served. Therefore, defendant may offset the § 6.4 premium payments against overtime owed.

## C. Exemption

■ Another issue is whether the eleven plaintiffs who hold the rank of captain are exempt from FLSA protection. 29 U.S.C. § 213(a)(1) states that the provisions of § 207 shall not apply to any employee employed in a bona fide executive, administrative or professional capacity. "The regulations define bona fide executive as an employee with supervisory duties who is paid on a salaried basis." *Mich. Assn. of Gov. Emp. v. Mich. Dept. of Corr.*, 992 F.2d 82, 83 (6th Cir.1993); 29 C.F.R. § 541.1(a–f), 541.117(a). The employer bears the burden of showing that an employee is exempt from FLSA's protection and the exemptions are to be narrowly construed. *Corning Glass Works v. Brennan*, 417 U.S. 188, 197, 94 S.Ct. 2223, 2229, 41 L.Ed.2d 1 (1974); *Mich. Assn.*, 992 F.2d at 83. An employee is paid on a sala-

ried basis if "under his employment he regularly receives each pay period ... a predetermined amount constituting all or part of his compensation, which amount is not subject to reduction because of variations in the quality or quantity of the work performed". 29 C.F.R. § 541.118(a). An employer can, however, reduce compensation for violation of safety rules of major significance without affecting an employee's exempt status. 29 C.F.R. § 541.118(a)(5). Because an exception is available for safety rules of major significance, "reductions made for other types of rules constitute reductions based on the quantity and quality of an employee's work". *Shockley v. City of Newport News*, 997 F.2d 18, 24 (4th Cir.1993).

■ Defendant argues that the eleven captains are bona fide executives and are therefore exempted from FLSA protection. For purposes of this motion plaintiffs concede the supervisory nature of their duties; however, plaintiffs insist that they are not bona fide executives because they were not paid on a salaried basis.[7]

Numerous briefs and two oral arguments reveal that plaintiffs' argument is based on two factors: (1) the captains' overall compensation was lower than their base wages;[8] and (2) Captains Lackey and Dunfield were suspended for minor violations and, thus, the captains were subject to suspensions for infractions that were based on the quality or quantity of work performed.[9]

■ Plaintiffs' first argument is without merit. In *Mich. Assn.* the court said "employees are not paid on a salaried basis if the

---

7. Defendant argues in its reply brief that several plaintiffs admitted in depositions that they were paid on a salary basis and therefore should be held to this "admission". I reject this argument for the simple reason that a person who is not versed in the law should not be expected to distinguish between the common meaning of salary and the manner in which it is used in FLSA.

8. As evidence of this fact plaintiffs point to affidavits submitted by plaintiffs Currigan, Dunfield and Uhl which state that by working additional hours each earned an amount equal to 20%–25% of their base wages in additional compensation.

9. According to a "Notice of Disciplinary Action", signed by the City Manager, a Department Head,

a Supervisor and Michael Currigan, Captain Michael Currigan was suspended November 16, 1989 for 12 hours without pay for violating General Order # 10–84, §§ 1, 2 and 5 and General Order # 6–87, § B–4. The disciplinary action was assessed after it was found that Currigan and his company used a fire truck to go rent a movie at a local video store.

Another Notice of Disciplinary Action said that Captain Wilbur Uhl was suspended on September 26, 1985 for twelve hours without pay, for conduct unbecoming an officer in violation of § 21.16. (No General Order number was given in the documents provided to the court). Captain Uhl was punished for belligerent and antagonistic behavior directed at a Chief Officer on the fireground.

employee's predetermined amount is so far below their actual salary that the minimum is nothing more than an illusion". *Mich. Assn.*, 992 F.2d at 84 n. 3. The fact that three plaintiffs received 25% their base wages in additional compensation is not enough evidence to show that the base compensation was a mere illusion. Therefore, plaintiffs cannot meet the *Mich. Assn.* test. *Id.*

■ Defendant attacks plaintiffs' second contention by arguing that the Uhl and Currigan suspensions occurred before 1991, i.e., prior to the statute of limitations period, that no captains have been disciplined since those suspensions and therefore, the captains were not subject to reductions based on factors other than the quantity or quality of their work during the relevant time period.

The issue of when employees are actually subject to employer policies was addressed in *Mich. Assn.* In that case the court was asked to interpret an employer policy of docking employees for absences of less than a day. *Mich. Assn.*, 992 F.2d at 85. The employer argued that the policy was never enforced; therefore, the employees were not subject to this policy. *Id.* The court rejected this reasoning and instead endorsed a test that focused on the content of the policy instead of whether the policy was ever administered. *Id.* at 86. Despite this approach the court felt that actual implementation was relevant and was "troubled" by the parties' inability to point to any evidence that supported either interpretation of the policy. *Id.* So, actual implementation or express policy statements are necessary if the true nature of the policy is in dispute, but are not necessary to show that employees were subject to a certain policy. *Id.*

In this case plaintiffs point to two cases in which captains were disciplined for minor infractions under regulations titled "General Orders". Defendant has not submitted any documents which state that during the relevant time period these General Orders were not Department policy or that the General Orders were rescinded or revised. Thus, defendant has not met its burden of showing that this court should find that the current policy is different than defendant's policy prior to 1991. Therefore, the captains were

subject to reductions in pay that related to the quantity or quality of their work. Plaintiffs do not need to point to actual implementation of the policy because, due to the punishment imposed upon Uhl and Currigan, the true nature of the policy is not in dispute.

Finally, although defendant does not address this issue, it is appropriate to point out that Uhl and Currigan did not violate safety rules of major significance. *Shockley*, 997 F.2d at 25. (Violations of disciplinary infractions by law enforcement personnel cannot be construed as major safety violations inasmuch as any breakdown in discipline may ultimately jeopardize public health and safety); *Klein v. Rush–Presbyterian–St. Luke's Medical Ctr.*, 990 F.2d 279, 286 (7th Cir. 1993). (Violations of major safety rules are those "relating to the prevention of serious danger".) For these reasons the captains cannot be considered exempt employees under FLSA.

## D. Statute of Limitations

■ The parties also dispute the defendant's liability under the statute of limitations. "The statute provides that such actions must be commenced within two years 'except that a cause of action arising out of a willful violation may be commenced within three years after the cause of action accrued'." *McLaughlin v. Richland Shoe Co.*, 486 U.S. 128, 129, 108 S.Ct. 1677, 1679, 100 L.Ed.2d 115 (1988); 29 U.S.C. § 255(a).

Plaintiffs argue that defendant's action was willful; therefore, they should be able to recover any compensation lost between February 14, 1991 and December 16, 1993. Defendant denies that the violations are willful and thus, plaintiffs should only be allowed to recover compensation lost between February 14, 1992 and December 16, 1993. I agree with defendant. These parties engaged in intense negotiations in which each party submitted several proposals as to rates of pay. Eventually a CBA was hammered out, which defendant followed faithfully during the relevant time period. I cannot find any evidence of willfulness under these facts. Therefore, the appropriate statute of limitations period is two years.

### Conclusion

Accordingly, Defendant remains liable to all plaintiffs for failure to pay sufficient overtime during minimum manning shifts from February 14, 1992 until December 16, 1993. Defendant may offset all premium overtime paid under § 6.4 of the CBA against overtime found to be due.  IT IS SO ORDERED.