Betty J. BRIDGES, Plaintiff,

v.

AMOCO POLYMERS, INC, Defendant.

No. CV196–104.

United States District Court,
S.D. Georgia,
Augusta Division.

Dec. 30, 1997.

Janet Elizabeth Hill, Nelson, Hill, Lord & Beasley L.L.P., Athens, GA, John Paul Batson, Augusta, GA, for Plaintiff.

James Brian Ellington, Hull, Towill, Norman & Barrett, Augusta, GA, for Defendant.

## ORDER

BOWEN, Chief Judge.

Before the Court in the above-captioned matter are Plaintiff's Motion for Partial Summary Judgment and Defendant's Cross Motion for Summary Judgment in this case arising under the Fair Labor Standards Act. Upon careful consideration of the briefs submitted by the parties, arguments presented to the Court, and relevant statutory and case law it is hereby ORDERED that Plaintiff's Motion is **DENIED** and Defendant's Motion is **GRANTED** for the reasons stated below.

## I. FACTS

Defendant operates a plant in Augusta, Georgia producing various polymers. Plaintiff has worked at the Amoco plant since 1988, and is still presently employed with the same. Specifically, Plaintiff works in the Amodel, Xydar, and Compounding Division (AXC). Plaintiff works with a group of approximately five persons monitoring equipment. She works a series of twelve hour rotating shifts consisting of three shifts in one week and four in the next. As a result, she works eighty-four hours every two weeks, and is paid seventy-six hours of straight time and eight hours of overtime, because of the forty-eight hours in the second week.

Officially, shifts run from 6:30 AM to 6:30 PM.[1] A regular twelve hour shift includes a fifteen minute break early in the shift, a thirty minute meal period, and a second fifteen minute break late in the shift. During the "meal period," employees are not allowed to leave the plant. Employees can get permission to eat anywhere on the 100 acre site, but generally remain at their work site. The only regular affirmative requirement for employees during the "meal period" is to inform their supervisor where they can be reached if they leave the work site. Employees are subject to recall from their "meal period" to handle plant emergencies, but are not required to eat and work at their station. Plaintiff asserts that her "meal period" is often interrupted, however, she offers no specific incidents of interruption.

Employees are required to wear a uniform, which is provided by Amoco. The uniform is not taken home. This uniform consists of a one-piece jumpsuit or a two-piece pair of pants and shirt. Thus, prior to the start of and at the conclusion of their shift, employees change clothes. In her Motion, Plaintiff states that it takes her five to ten minutes to change clothes.

Ten minutes prior to the start of every shift there is a required safety meeting for the oncoming shift. After the safety meeting, the oncoming shift personnel enter the work area together, and are briefed by their outgoing counterparts. This transition period lasts five to ten minutes. Accordingly, an employee on the departing shift may work for five or ten minutes past her official shift updating her replacement.

Amoco concedes that time for the safety meetings is compensable. Therefore, Amoco considers that a "twelve hour" shift actually lasts twelve hours and ten minutes. However, Amoco contends that the thirty minute "meal period" is not compensable time. Since it considers the "meal period" as not compensable, Amoco subtracts thirty minutes and considers that employees are only due eleven hours and forty minutes of compensation for their shift work and safety meeting. Amoco uses the remaining twenty minutes to offset for shift-turnover and changing times, which it concedes are compensable.[2] Amoco

---

1. There was a period when the shifts ran from 7:00 AM to 7:00 PM. However, this is not an issue.

2. Defendant in its Brief argued that the entire changing time was *De Minimis*, and thus not compensable. However, at oral argument, Defendant conceded that the changing time was compensable time.

gratuitously provides shower facilities and does not consider showering a compensable activity. Indeed, Plaintiff does not claim that showering time is compensable (Plaintiff's Brief in Support of Motion for Partial Summary Judgment at 5 n. 2).

Plaintiff claims Amoco violated the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 et seq., because she was underpaid. She argues that the "meal period" is compensable, and therefore cannot be offset against the pre-shift and post-shift activities. In short, Plaintiff claims that a typical work day lasts from twelve hours and twenty-five minutes to twelve hours and forty minutes (Plaintiff's Brief in Support of Motion for Partial Summary Judgment at 5). Plaintiff's figure includes the shift, changing into and out of her uniform,[3] shift-turnover, and ten minutes for the safety meeting.

Accordingly, the evidence before the Court indicates that the Plaintiff's shift is as follows:

| | |
|---|---|
| Punch In | |
| 6:15–6:20 | Change Into Uniform |
| 6:20 | Safety Meeting |
| 6:30 | Shift Begins |
| First Break | (15 Minutes) |
| Meal Period | (30 Minutes) |
| Second Break | (15 Minutes) |
| 6:30 | Shift Ends |
| 6:30–6:40 | Shift–Turnover (5–10 Minutes) |
| 6:40–6:45 [4] | Change Out Of Uniform |
| Punch Out | |

## II. SUMMARY JUDGMENT STANDARD

The Court should grant summary judgment only if "there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Applicable substantive law determines which facts are material, that is, which facts have the potential to affect the outcome of the trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). The Court must "resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences in his [or her] favor." *United States v. Four Parcels of Real Property*, 941 F.2d 1428, 1437 (11th Cir.1991) (en banc) (internal quotation marks and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). However, the nature of the movant's initial burden "varies depending on whether the legal issues, as to which the facts in question pertain, are ones on which the movant or the non-movant would bear the burden of proof at trial." *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir.1993). If the *movant* bears the burden of proof at trial, that party "must show that, on all the essential elements of its case, ... no reasonable jury could find for the non-moving party." *Four Parcels*, 941 F.2d at 1438. On the other hand, if the *non-movant* has the burden of proof at trial, the movant may carry its initial burden either by negating an essential element of the non-movant's case or by demonstrating that there is an absence of evidence to prove a fact necessary to the non-movant's case. *See Clark v. Coats & Clark, Inc.*, 929 F.2d 604, 606–08 (11th Cir.1991) (explaining *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970) and *Celotex Corp. v. Catrett*, 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). Merely stating that the non-movant cannot meet its burden at trial is insufficient. *Id.*

If—and only if—the movant carries the initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." *Id.* at 608.[5] Again, this burden varies depending

---

**3.** In her Deposition, Plaintiff states that it typically takes five minutes to change, *unless* she showers. (Bridges Dep. at 94–95). As already noted, Plaintiff *does not claim shower time as compensable.*

**4.** Defendant compensates employees for any shift work that causes the post-shift activities to extend past 6:45.

**5.** The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained in the complaint. *See Morris v. Ross*, 663 F.2d 1032, 1033–34 (11th Cir.1981) Rather, the non-movant must respond by affidavits or as otherwise provided by Fed. R.Civ.P. 56.

upon whether the movant or non-movant bears the burden of proof at trial. If the movant has the burden of proof at trial, the non-movant may avoid summary judgment only by coming forward with evidence sufficient to withstand a motion for directed verdict at trial. *Fitzpatrick,* 2 F.3d at 1116 (citation omitted). If the non-movant bears the burden of proof at trial, the non-movant's response must be tailored to the method by which the movant carried its initial burden. If the movant presented evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." *Id.* If the movant demonstrated an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant, or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." *Id.* (citation omitted).

The clerk has given the non-moving party notice of the summary judgment motion, of the right to file affidavits or other materials in opposition, and of the consequences of default. Therefore, the notice requirements of *Griffith v. Wainwright,* 772 F.2d 822 (11th Cir.1985), are satisfied. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

## III. ANALYSIS

 In order to establish a prima facie violation of the FLSA, a plaintiff must show "as a matter of just and reasonable inference that the wages paid to him did not satisfy the requirements of the FLSA." *Donovan v. New Floridian Hotel, Inc.,* 676 F.2d 468, 475 n. 12 (11th Cir.1982); *see also Anderson v. Mt. Clemens Pottery Co.,* 328 U.S. 680, 686–87, 66 S.Ct. 1187, 90 L.Ed. 1515 (1946), superseded by statute on other grounds as stated in *Carter v. Panama Canal Co.,* 463 F.2d 1289, 1293 (D.C.Cir.1972). Once the employee proves that the wages received were less than required by the FLSA, the burden shifts to the employer to negate the Plaintiff's claim with proper records. *Donovan,* 676 F.2d at 475.

 "The question of whether a particular set of facts and circumstances constitutes work under the FLSA is a question of law." *Dade County, Florida v. Alvarez,* 124 F.3d 1380, 1383 (11th Cir.1997) (citing *Birdwell v. City of Gadsden, Ala.,* 970 F.2d 802, 807 (11th Cir.1992)). As the *Birdwell* court stated, "[i]t is for the court to determine if a set of facts gives rise to liability; it is for the jury to determine if those facts exist." *Birdwell,* 970 F.2d at 808.

### 1. MEAL PERIOD

 Here, the primary issue is whether or not Plaintiff's "meal period" is compensable. Plaintiff claims that the "meal period" is compensable because 1) she must remain at the plant which inures to the benefit of the Defendant, 2) she is subject to recall during her "meal period," and 3) her "meal period" is often interrupted to handle work because of recall. Conversely, Defendant argues that the "meal period" is not compensable because 1) Plaintiff has no substantial responsibilities during her "meal period," 2) any interruptions are infrequent and are the result of a major event, 3) in the event of an interruption, employees are allowed to take another "meal period," and 4) under the FLSA, requiring employees to remain at the work facility during "meal periods" does not make the time compensable.

The applicable regulations define the meal period as follows:

> Bona fide meal periods are not worktime. Bona fide meal periods do not include coffee breaks or time for snacks. These are rest periods. The employee must be completely relieved from duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. *For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.*

29 C.F.R. § 785.19 (emphasis added). The evidence is clear that the Plaintiff is not eating her meals while monitoring her machinery. Therefore, the issue is whether the fact that she is subject to recall from her "meal period" and has to remain at the plant causes her "meal period" not to be "bona fide" under the Act.

In *Kohlheim v. Glynn County*, 915 F.2d 1473 (11th Cir.1990), a group of firefighters' "meal period" was determined to be compensable. This is the case that Plaintiff heavily relies upon in support of her argument. While there are some similarities, the facts in this case are readily distinguishable.

The *Kohlheim* court stated that "the essential consideration in determining whether a meal period is a bona fide meal period or a compensable rest period is whether the employees are in fact relieved from work for the purpose of eating a regularly scheduled meal." *Id.* at 1477. The Eleventh Circuit found that "the firefighters were subject to *significant* affirmative responsibilities" during their meal period, and thus the period was compensable. *Id.* (emphasis added). A firefighter's job is to train for, wait for, and respond to emergencies. To do so, they must remain at their station house. The bulk of a fireman's job is to *wait* at the station, while a plant worker's job is to *work* at their station. The *Kohlheim* court noted that "the geographic location of the break is not dispositive; what matters in meal period cases is whether the employees are subject to real limitations on their personal freedom which inure to the benefit of their employer." *Id.* at 1477, n. 19 (citing *Wahl v. City of Wichita*, 725 F.Supp. 1133, 1138–1144 (D.Kan.1989)); *see also* 29 C.F.R. § 785.19(b).

▆▆▆ Recent Eleventh Circuit FLSA case law emphasizes that for the time to be compensable it must be "conducted predominately for the benefit of the employer." *Dade County*, 124 F.3d at 1384. Whether it predominately benefits the employer "depends on the degree to which an employee's freedom is undermined by the work-related activity. '[I]t is clear that an employee's free time *must be severely restricted* for off-time to be construed as work time for purposes of the FLSA.' " *Id.* (quoting *Birdwell*, 970 F.2d at 810) (emphasis added).

Here, while the Plaintiff is subject to being recalled from her meal break, she does not have any significant responsibilities and is not severely restricted. She is not required to stay at her duty station and can eat anywhere at the plant, but must inform her supervisor where she will be. If she needs to leave the plant for a personal reason, she can get permission to do so. In the event that she gets interrupted during her break she gets another break. Neither the case law nor the Act state or suggest that the mere fact that an employee may be recalled from their lunch break amounts to a severe restriction. Indeed, such logic would arguably cause most all lunches to be compensable, for most every employee in the Nation is subject to having his lunch hour interrupted by his employer in some fashion or another to handle a "big event." Even if Plaintiff had presented evidence that interruptions did in fact occur frequently, which she did not,[6] those interruptions would not rise to the level of significant responsibilities or severe restrictions making her uninterrupted meals compensable. I find that no genuine issues of material fact exist. Accordingly, as a matter of law, I conclude that Plaintiff's "meal period" is predominately for her benefit and not her employer. Therefore, the "meal period" is not compensable and can be used to offset compensable pre-shift and post-shift activities.[7]

6. In Plaintiff's deposition, she indicates there "have been times" when interruptions occurred during plant upsets which would be a "big event" (Bridges Dep. at 107). In a subsequent affidavit, Plaintiff provides nothing other than conclusory statements that these interruptions occur often.

7. In Plaintiff's Motion, she argues that when interrupted, "on occasion" she is allowed to make up the lost time. However, a careful review of her deposition indicates that her regular practice has been to make that time up through an extended break. (Bridges Dep. at 107–09). Moreover, Defendant presents evidence that Amoco's policy is ensure that an employee is given another meal period or compensated monetarily if the meal is interrupted. (Jones Aff. ¶ 9). Plaintiff provides no evidence to contradict this.

### 2. *PRE–SHIFT AND POST–SHIFT ACTIVITIES*

Plaintiff claims that a typical work day lasts from twelve hours and twenty-five minutes to twelve hours and forty minutes. (Plaintiff's Brief in Support of Motion for Partial Summary Judgment at 5). In her Motion, Plaintiff indicates that the shift-turnover and changing times range from fifteen minutes to thirty minutes. Plaintiff asserts that it takes five to ten minutes to change, and also asserts that shift-turnover lasts five to ten minutes. However, Defendant notes that Plaintiff states it typically takes five minutes to change, unless she showers. (Bridges Dep. at 94–95). As already noted, Plaintiff does not claim shower time as compensable. Accordingly, Plaintiff has presented no evidence that her actual changing time into or out of her uniform is greater than five minutes. Therefore, at most, the shift-turnover and changing activities take fifteen to twenty minutes. As already stated, Defendant offsets twenty minutes of the thirty minute "meal period" against the shift-turnover and changing times.

 I note that workdays are never identical and that some slippage in time might exist to the detriment of the employees. However, the facts before the Court indicate that this could only occur with rare frequency. Indeed, the facts indicate that the pre-shift and post-shift activities regularly take only fifteen to twenty minutes. Yet, Amoco *always* pays as if these activities take twenty minutes.[8] Nevertheless, any slippage to the detriment of the employees would fairly be characterized as *De Minimis*, since it occurs with rare frequency—if at all.[9] Since the "meal period" is properly offset against the pre-shift and post-shift activities, I conclude that no violation of the FLSA exists.

---

8. Prior to November 9, 1995, employees were paid for 12 hours and 10 minutes per shift. An additional ten minutes was available to offset against pre-shift and post-shift activities. Accordingly the potential for slippage to the detriment of the employee was virtually nonexistent during this time.

9. In FLSA cases, the *De Minimis* doctrine addresses the administrative difficulty with record-

## IV. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Partial Summary Judgment is hereby **DENIED** and Defendant's Motion for Summary Judgment is hereby **GRANTED.** The Clerk is instructed to ENTER FINAL JUDGMENT in favor of Defendant and CLOSE this case. The Clerk is further instructed to assess costs against Plaintiff.

ing small amounts of time for pay purposes. *Lindow v. United States,* 738 F.2d 1057, 1062 (9th Cir.1984). The test used by the courts in determining whether time is *De Minimis* is threefold: 1) the administrative difficulty of recording the additional time; 2) the aggregate amount of compensable time; and 3) the *regularity* of the additional work. *Id.* at 1063.