Michael T. CLOUTIER and
Donald Ivy, Plaintiffs,

v.

CITY OF PHENIX CITY, Defendant.

Civ. A. No. 92–D–71–E.

United States District Court,
M.D. Alabama, E.D.

Sept. 2, 1993.

## SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising from it in the light most favorable to the nonmoving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157, 90 S.Ct. 1598, 1608, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no genuine issue as to any material fact, since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The trial court's function at this stage of the case is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510.

## FACTS

This case concerns two separate personnel practices followed by the defendant, the city of Phenix City ("the City"). A number of the City's police officers are the first set of plaintiffs and a fire department battalion chief is the second plaintiff.[2]

---

David L. Hirsch, for plaintiff.

Charles E. Floyd, for defendant.

### MEMORANDUM OPINION

DE MENT, District Judge.

Now before the court are the parties cross-motions for summary judgment. These motions were deemed submitted June 7, 1993.[1]

### JURISDICTION

Jurisdiction is proper under 28 U.S.C. § 1331. Personal jurisdiction and venue are not contested.

1. At the parties' request, the court ordered the case submitted on cross-motions for summary judgment. Both the plaintiffs and the defendant assured the court that the facts were undisputed and that the case could be resolved by the court as a matter of law.

2. A class action brought under the FLSA differs significantly from one brought pursuant to Rule 23 of the Federal Rules of Civil Procedure. In order to become a FLSA class plaintiff, an employee must "opt in" to the class, in writing.

The City has established a 28–day work cycle, requiring its police officers to work "14 days on and 14 days off." Evidently, the plaintiffs worked 12–hour shifts, 4 days in a row, for a total of 14 working days per 28–day period.[3] By this reckoning, the police officers worked a total of 168 hours during each 28–day period.

The parties agree that police officers were routinely required to report to work 15 minutes before their shifts began. According to the standard operating procedures[4] of the police department:

> The Uniform Division will operate on three shifts. Officers shall report for duty 15 minutes prior to the beginning of their tour. This 15 minute period shall be used to brief Officers on current information concerning the community, wanted persons, stolen vehicles, etc.

Plaintiff's Ex. A at 1, 2.

The detective division was also required to report 15 minutes early. Plaintiff's Ex. A at 1. Violation of this requirement could be grounds for discipline. *Id.* On occasion, in lieu of the 15–minute briefing sessions, the police officers were ordered to report immediately to the scene of a crime or accident. *See* Cloutier Aff., ¶ 4.

In addition to reporting early, the plaintiffs claim that the police officers were required to stay at the station once their tours of duty were over in order to complete paperwork. Standard Operating Procedure 34 states that "[a]ll reports will be completed before the end of the tour of duty ... No incomplete report shall carry over on officer's off days." Plaintiff's Ex. A at 38. Again, failure to comply with this procedure could be grounds

for discipline. *Id.* at 4. All of the plaintiffs have testified that they stayed late to complete paperwork at least once per tour of duty, usually at the end. *See* Cloutier Aff., ¶ 5.[5] *See also* Pledger Dep. at 12–13; Culpepper Dep. at 33. The officers received overtime pay if they stayed more than 15 minutes after their tour of duty was over, but apparently went uncompensated if the additional time was 15 minutes or less. Pledger Dep. at 12.

The plaintiffs further claim that the time sheets maintained by the City do not accurately reflect the number of hours worked. The testimony of several witnesses shows that the records were altered to reflect shifts of exactly twelve hours. Franklin Dep. at 20–22; Culpepper Dep. at 32. The City admits that the 15–minute briefing period is not included on the timesheets. Culpepper Dep. at 30–33.

The police officers were allowed an hour-long lunch period during each shift. During their lunch hour, the plaintiffs claim they were required to remain in uniform. Cloutier Aff., ¶ 29.[6] The officers were required to monitor the police department radio in case their supervisors needed to speak with them.

The plaintiffs have testified through affidavit that they were "constantly interrupted" during their lunch hour by the dispatchers or other police department personnel. Cloutier Aff., ¶ 30. The officers claim that they were "routinely" called by the dispatcher and that they were repeatedly asked questions by citizens whenever they ate lunch in a public place. *Id.*, ¶¶ 30–31. However, at her deposition, the only plaintiff to be deposed, testified that the interruptions apparently consist

---

The court authorized the plaintiff to provide notice to similarly situated police department and fire department employees and to provide them with an opportunity to participate in this lawsuit. Approximately 30 plaintiffs have joined Michael Cloutier. No other plaintiff has come forward to join Donald Ivy.

3. Actually, the sequence appears to be three 4–day tours of duty (four 12–hour shifts) per 28–day cycle, and one 2–day tour of duty (two 12–hour shifts) for a total of 14 days per cycle.

4. According to the City, "Standard Operating Procedures (SOP) are guidelines, standards, pro-

cedures, and methods that Uniform Officers are to follow during their daily operations. These procedures are to be adhered to unless extenuating circumstances warrant differently." Plaintiff's Ex. F.

5. Several of the plaintiffs have submitted affidavits which are identical in nearly every particular. Although the court could cite every single affidavit in all instances, it will cite to the named plaintiff's affidavit only.

6. Police Chief Roy Culpepper claims that the officers were free to remove their uniforms if they wanted to. Culpepper Dep. at 45.

of an occasional request for information which could be handled over the police department radio. Sanders Dep. at 38–40.

In addition to the administrative duties which the officers were occasionally required to discharge, officers are obligated to respond, if any incident, such as a crime or an accident, should occur in an officer's immediate area. *Id.*, ¶¶ 31–34. If the department were shorthanded, the plaintiffs were not allowed to take a lunch period but were compelled to take over the duties of the absent officers. *Id.*, ¶ 35. During the lunch hour, officers remained in uniform and were required to keep in radio contact with police headquarters at all times.

On the other hand, the officers were free to go to Columbus, Georgia[7] during that hour as long as they took their own cars and were able to return to Phenix City before the hour was up. Sanders Dep. at 36. Officer Sanders also testified that an officer could drive anywhere he or she wanted without any restriction on the distance, as long as the officer returned within the hour. *Id.* The officers were allowed to run personal errands or engage in any other sort of personal activity during the lunch hour, even though they were required to maintain radio contact while so doing. Sanders Dep. at 40; Rushin Dep. at 67.

The second group of plaintiffs[8] are fire department battalion chiefs who were excluded from participation in the settlement agreement between the City and the Department of Labor. The settlement awarded the firefighters unpaid wages to which the they claimed entitlement. Plaintiff Ivy was excluded from participation in that settlement

and now seeks to recover back pay for the period covered by the settlement agreement.

### DISCUSSION

#### A. Count I: The Police Officers

■ The Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. § 201 *et seq.* requires employers to pay overtime to employees who work more than forty hours per week.[9] 29 U.S.C. § 207(a)(1). Section 7(k) of the FLSA exempts certain public employers from this requirement. This section reads, in pertinent part:

> No public agency shall be deemed to have violated subsection (a) of this section with respect to the employment of ... any employee in law enforcement activities ... if ...
>
> (2) in the case of such an employee to whom a work period of at least 7 but less than 28 days applies, in his work period, the employee receives for tours of duty which in the aggregate exceed a number of hours which bears the same ratio to the number of consecutive days in his work period as 216 bears to 28 days.

29 U.S.C. § 207(k).

In other words, when a city requires its police officers to work at least 7, but less than 28, days in a cycle, it may require its employees to work more than forty hours before it is compelled to pay them overtime. According to the standards promulgated by the Department of Labor,[10] a law enforcement officer working this kind of schedule is entitled to overtime after he or she has worked for 43 hours per week or when he or she has worked more than 171 hours in a 28–day period. 29 C.F.R. § 553.230.[11]

---

7. Phenix City is located on the Alabama–Georgia border. Columbus is immediately across the Georgia border.

8. In fact, the named plaintiff is the only member of this "class"; no one else opted in.

9. In 1985, the FLSA was held applicable to states and municipalities. *Garcia v. San Antonio Metro. Transit Auth.*, 469 U.S. 528, 105 S.Ct. 1005, 83 L.Ed.2d 1016 (1985).

10. In *Skidmore v. Swift*, 323 U.S. 134, 140, 65 S.Ct. 161, 164, 89 L.Ed. 124 (1944), the Supreme

Court held that the administrative regulations are not binding on the court, but may nonetheless be used to guide the court in interpreting the FLSA.

11. Section 553.230(b) reads:

For those employees engaged in law enforcement activities who have a work period of at least 7 but less than 28 consecutive days, no overtime compensation is required under section 7(k) until the number of hours worked exceeds the number of hours which bears the same relationship to 171 as the number of days in the week bears to 28.

The City does not contest plaintiffs' allegations that the employees were not paid for the 15–minute briefings.[12] Although the City characterizes the plaintiffs' affidavits which were offered in support of their position as "self-serving," the court notes that the City has not submitted any evidence to the contrary. Accordingly, the court finds that the plaintiffs were required to work 15 minutes before the start of each shift and that they were required to work 15 minutes after the end of the final shift in each tour of duty. The court further finds that the plaintiffs were not compensated for this time. Therefore, adding this additional time to the plaintiffs' regularly scheduled hours, the plaintiffs worked a total of 172.5 hours during a 28–day cycle, which would entitle them to 3 additional hours of "regular" time and 1.5 hours of overtime per cycle.

The City insists, however, that it allowed the officers a paid lunch period which offsets the overtime and brings the total number of hours worked within legally acceptable limits. The City refers the court to 29 C.F.R. pt. 553, discussing "compensatory time off" in connection with public employees. *See also* 29 U.S.C. § 207(*o*) (discussing "comp" time for public employees). Section 553.223(b) provides:

> If a public agency elects to use the section 7(k) exemption, the public agency may, in the case of law enforcement personnel, exclude meal time from hours worked on tours of duty of 24 hours or less, provided that the employee is completely relieved from duty during the meal period and all

the other tests in § 785.19 of this title are met. On the other hand, where law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities (e.g. "stakeouts"), they are not considered to be completely relieved from duty and any such meal periods would be compensable.

29 C.F.R. § 553.223(b).[13]

According to the City, the plaintiffs were allotted one hour per shift as a lunch period which drops the total number of hours worked per cycle down to 162.5, well within the legal limit. Plaintiffs argue that they were "on call" during their lunch hour and that this period cannot be considered free time.[14]

The regulations promulgated by the Department of Labor guidelines offer some initial guidance. A "bona fide meal period" is described as follows:

> Bona fide meal periods are not work time. . . . The employee must be completely relieved from duty for the purposes of eating regular meals . . . The employee is not relieved if he is required to perform any duties, whether active or inactive while eating. For example, an office employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

29 C.F.R. § 785.19.

The employee must be "unable to use the time effectively for his own purposes." 29 C.F.R. § 785.15.

The regulation then computes the ratio—6.11 hours per day—and provides a chart to determine the maximum hour standards for certain work periods. *Id.*

12. The plaintiff argues that the City falsified the time sheets submitted by the police officers so that its records do not reflect the actual time worked. Affidavit of Sgt. Joseph L. Gary, ¶ 10; Affidavit of Sgt. Mickle Hood, ¶ 10; Affidavit of Sgt. David D. Darrah, III, ¶ 10. At his deposition, Captain Willie Rushin admitted that the time sheets were unreliable and did not accurately reflect the amount of time worked by the plaintiff officers. Rushin at 31–36; Long at 41–57.

Remarkably, the City does not challenge these allegations. A panel of the Eleventh Circuit has stated that an employer's failure to keep adequate records will not prevent a FLSA plaintiff from recovering back wages, as long as the employee can show that he or she performed work for which no compensation was received. *Brock v. Norman's Country Market, Inc.* 835 F.2d 823 (11th Cir.), *cert. denied* 487 U.S. 1205, 108 S.Ct. 2845, 101 L.Ed.2d 883 (1988). The court accepts plaintiffs' version as true and finds that the time sheets and the sign-in sheets are not reliable evidence of the time worked.

13. As discussed below, section 785.19 describes a "bona fide meal period."

14. Once again, the problems with the City's records make it difficult to determine when the officers took their lunch periods, how long the periods lasted, or whether the officers were called back on duty early. *See* Long Dep. at 44–47.

The Eleventh Circuit briefly discussed this regulation, holding that firefighters whose lunch hour was subject to severe restrictions, were entitled to compensation. *Kohlheim v. Glynn County,* 915 F.2d 1473 (11th Cir.1990). During meal times, the *Kohlheim* plaintiffs were not allowed to leave the station and were "subject to significant affirmative responsibilities ..." *Id.* at 1477. After reviewing the record, the *Kohlheim* panel upheld the district court's decision in which it found that the lunch hour was work time and awarded back pay to the firefighters, reasoning that the firefighters used the meal time predominantly for their employer's benefit.[15]

Other courts have reached similar conclusions. For example, in *Lamon v. City of Shawnee,* 972 F.2d 1145 (10th Cir.1992), *cert. denied* —— U.S. ——, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993), the plaintiffs, a group of police officers, claimed overtime compensation for their meal periods. The officers were relieved of their patrol duties while at lunch but were required to leave a telephone number where they could be reached or else to monitor a portable radio. The officers were also obligated to respond to emergency calls, citizen requests, personnel shortages, and crimes or accidents which occurred near them. *Id.* at 1149. No personal errands, such as getting a haircut or picking up dry-cleaning, were allowed, although the officers were permitted to eat lunch at any restaurant of their choosing in the city or nearby. The *Lamon* panel, relying heavily on its interpretation of the Department of Labor regulations quoted above, reversed, writing: "If during meal periods, a police officer's time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, the officer is completely relieved from duty and is not entitled to compensation under the FLSA." *Id.* at 1157.

Several months after the *Lamon* decision, another panel of the Tenth Circuit revisited the issue with the same result. In *Armitage*

*v. City of Emporia,* 982 F.2d 430 (10th Cir. 1992), a group of police officers sought compensation for their lunch periods. These officers were allowed to eat where they chose, although they could not consume alcohol; they were required to carry a paging device with them at all times, and they were required to respond to questions from the public. *Id.* at 431. If they were called to duty from lunch, the officers were given overtime pay. After reviewing these facts, the *Armitage* panel concluded that the officers were not primarily engaged in work-related duties while they were at lunch. *Id.* at 432.

Also, in *Hill v. United States,* 751 F.2d 810 (6th Cir.1984), a panel of the Sixth Circuit concluded that a letter carrier who was allowed to eat only at certain authorized restaurants, who was required to maintain possession of accountable receipts and items, and who was required to respond to citizen inquiries, was not entitled to compensation while at lunch. The panel held that plaintiff Hill's lunch time activities, did not "predominantly benefit" Hill's employer, the United States Postal Service. *Id.* at 813–14.

In the instant case, the plaintiffs are free to leave the police station and to drive anywhere they choose. They may run errands, eat lunch with friends or family, read a book or a magazine, or go to an exercise class—as long as they are back at the station at the end of the hour. Unlike the *Kohlheim* firefighters, who were required to remain at the station, the plaintiffs here are subject to no significant geographical restrictions, except those imposed by the limited time available. Also, unlike the *Kohlheim* plaintiffs who were faced with "significant affirmative responsibilities" while at lunch, the officers here, are not required to complete paperwork during mealtimes, although they are "encouraged" to do so.[16] Because the plaintiffs' activities are not severely restricted, even though the plaintiffs remain on call, the court finds, as a matter of law, that the lunch

---

**15.** The *Kohlheim* panel does not set forth the facts found by the district court.

**16.** The one which might entitle the plaintiffs to compensation is the statement in their affidavits alleging that they are "constantly interrupted."

The only plaintiff to be deposed, Mary Sanders, testified that her meals were often interrupted and that officers were required to respond to emergencies and calls during their lunch break. Sanders Dep. at 13–14.

period is used primarily for the benefit of the employees, not the City, and that the plaintiffs are not entitled to compensation for that time.

Therefore, even though the officers were required to work an additional 4½ hours per twenty-eight day cycle for which they were not paid, the City did pay them for an additional 14 hours during which they were not working.[17] The court finds that the defendant is entitled to judgment as a matter of law on Count One.

### B. Count II: The Fire Department Battalion Chiefs

■ For a number of years, plaintiff Donald Ivy has been a Fire Department Battalion Chief with the City. In 1990, the City settled the fire department's wage and hour dispute and entered into an agreement with the Department of Labor. As part of this agreement, the fire department employees were paid the back wages they were owed. It appears that the Phenix City Fire Department had required its employees to work 240 hours in a 28-day period, instead of the legally acceptable 212-hour maximum so that the firefighters were entitled to overtime pay for the excess hours they worked. See 29 U.S.C. §§ 207, 216(b). Plaintiff Ivy was excluded from the settlement because the City claimed he was not a bona fide employee. See Anthony Dep. at 34–36. He now sues to recover those back wages.

It appears that the City has conceded its fault and has offered to pay plaintiff Ivy two years worth of overtime. See Answer to Recast Complaint, ¶¶ 4–5 (filed March 2, 1993). ("However, the Defendant does admit that it appears it owes attorney [sic] Donald Ivy compensation that is within the statute of limitations otherwise provided than for a willful violation."). However, the City apparently denies that Ivy is entitled to liquidated damages or attorney's fees. Paragraph 4 of its Answer to Plaintiffs' Recast Complaint reads:

The Defendant would further deny that it has been in willful violation of any claim of the Plaintiff that would entitle him to three years of compensation or an attorneys' fee because the Department of Labor issued a nonenforcement policy on 7 January 1987 and Defendant believes that it followed that nonenforcement policy in good faith and as such in defense under 29 U.S.C. § 259.[18]

*Id.* at ¶ 4.

Once again, the plaintiff claims that the City deliberately falsified a document in order to evade the requirements of the FLSA. The document in question stated:

> Effective this 9th day of April, 1986, the Phenix City Fire Department and the City of Phenix City have adopted a 28-day work cycle for Firefighters. Bi-weekly check amounts will not change on any Firefighters' checks. The same amount will now be paid for 106 hours that was previously paid for 112 hours.
>
> .    .    .    .    .
>
> Pay will be based on a minimum of 212 hours per 28-day cycle.

Plaintiff Ivy's Ex. B.

Plaintiff Ivy claims that he was coerced, by threat of termination, into signing this document, even though he knew that the City had not paid him or any other firefighter in this manner. He further claims that the document was intended solely to mislead Department of Labor investigators and to avoid a third year of FLSA liability. Ivy Aff. ¶¶ 6–8. According to the plaintiff, the fraud on the part of the City indicates that the City's FLSA violation was willful. See 29 U.S.C. §§ 216, 260.

■ Under the FLSA, actions to recover unpaid overtime compensation must be brought within two years after the cause of action accrued. 29 U.S.C. § 255(a). If the employer "willfully" violated the FLSA, the employees may bring an action within three years. *Id.* In order to prove a willful viola-

---

**17.** Even if the court were to award the officers regular pay instead of overtime for the additional hours worked, the City is still entitled to an offset for the paid lunch hour so that the plaintiffs' net recovery would still be zero. See 29 C.F.R. § 553.230.

**18.** *See infra* note 20.

tion, the employees must prove that "the employer either knew or showed reckless disregard for the matter of whether its conduct was prohibited by the [FLSA.]" *See McLaughlin v. Richland Shoe Co.,* 486 U.S. 128, 108 S.Ct. 1677, 100 L.Ed.2d 115, (1988) (quoting *Trans World Airlines v. Thurston,* 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)). If indeed the City failed to comply with the FLSA and falsified documents in order to make it appear as though it had complied, then the City would be guilty of a willful violation. *See Donovan v. Pointon,* 717 F.2d 1320, 1323 (10th Cir.1983) (finding a willful violation where employer kept business records to indicate he had complied with FLSA when he had not), *cert. denied,* 466 U.S. 934, 104 S.Ct. 1902, 80 L.Ed.2d 453 (1984).

■ The plaintiff also seeks liquidated damages. Section 16(b) of the FLSA allows the court to impose liquidated damages in amount equal to the unpaid overtime. 29 U.S.C. § 216(b). However, the court does not have to award liquidated damages if the defendant can show that it acted in good faith. The Portal-to-Portal Act provides that

> if the employer shows to the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that his act or omission was not a violation of the [FLSA] ..., the court may, in its sound discretion, award no liquidated damages....

29 U.S.C. § 260.

This inquiry has both an objective and a subjective component. *Dybach v. State of Fla. Dep't of Corrections,* 942 F.2d 1562, 1566

(11th Cir.1991). In order "to satisfy the subjective 'good faith' component, the [employer has the burden of proving] that [it] had 'an honest intention to ascertain what [the FLSA] requires and to act in accordance with it.'" *Id.* (quoting *Brock v. Shirk,* 833 F.2d 1326, 1330 (9th Cir.1987) (per curiam), *vacated on other grounds, Shirk v. McLaughlin,* 488 U.S. 806, 109 S.Ct. 38, 102 L.Ed.2d 18 (1988) (internal citations omitted)).

Although the City maintains that it acted in good faith, it offers no evidence in support of its contentions. The defendant claims that it acted in accordance with a Department of Labor nonenforcement order,[19] but has not shown the order to the court and has not informed the court of the terms and conditions the order contains.[20] It has not made known to the court its reasons for believing Ivy was an exempt employee and for excluding him from the settlement.[21] Plaintiff Ivy claims that he was covered by the FLSA; a position which the City evidently now agrees is correct. He further claims that even if he had not been considered exempt, the City made him sign a false document in order to prevent the recovery of liquidated damages. The City has not come forward with any facts indicating this is untrue.[22]

The court repeatedly directed the parties to submit to it everything that they wished the court to consider. Indeed, the court told the parties to submit cross-motions for summary judgment in response to a verbal request from the parties themselves. As a result, the court must conclude that the City has submitted everything it intended to sub-

---

**19.** Reliance on an administrative ruling or other administrative action is a defense to an FLSA action. Section 259 reads, in part:

> [N]o employer shall be subject to any liability ... on account of the failure of the employer to pay minimum wages or overtime compensation under the [FLSA] ... if he pleads and proves that the act or omission complained of was in good faith in conformity with and in reliance on any written administrative regulation .. of [an] agency of the United States.

29 U.S.C. § 259(a) (emphasis added).

**20.** In their motion in limine, filed May 3, 1993, *plaintiffs* make reference to several Department of Labor opinion letters. The court does not

know whether one of these is the "order" to which the defendant refers.

**21.** At the deposition of Mark Anthony, counsel for defendant stated his opposition to the imposition of liquidated damages. *See* Anthony Dep. at 35–39. He also voiced his belief that "there is still a diversity of disputes in the—on federal circuits on whether these people are salaried employees or not." *Id.* at 37.

**22.** The court notes that even though the Department of Labor issued its nonenforcement order in 1987, the Department apparently found the City fire department to be in violation of the FLSA in 1990.

mit and that it simply has nothing to offer in defense.

The court finds that there are no genuine issues of material fact left to be tried and that plaintiff Ivy is entitled to judgment as a matter of law. A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. The court finds that the defendant has failed to meet its burden of coming forward with evidence from which a reasonable jury could conclude that its violation was not willful. The City offers nothing in opposition to the statements of Donald Ivy, leaving the court to conclude that he is telling the truth.

The court also finds that plaintiff Ivy is entitled to a reasonable attorney's fee. Section 16(b) of the FLSA provide

> Any employer who violates the provisions of section ... 206 or 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages or their unpaid overtime compensation ... The court in such an action shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action.

29 U.S.C. § 216(b).

■ Here, where plaintiff Ivy was compelled to hire counsel and file suit in order to obtain wages to which the City readily conceded he was entitled, the court believes that an award of attorney's fees is justified. Moreover, the City submitted no evidence tending to prove that its violation was not willful. An award of attorney's fees is even more justified in this instance. Accordingly, counsel for plaintiff Ivy is directed to submit to the court a fee petition, containing the number of hours spent on the *Ivy* claim (and *only* the *Ivy* claim) and his estimate, supported by appropriate affidavits, of the prevailing rate in the community in which his law office is located. *See Norman v. Housing Auth. of Montgomery,* 836 F.2d 1292 (11th Cir.1988).

## CONCLUSION

In sum, the court finds that the defendant is entitled to judgment as a matter of law as to plaintiff's Count One and that plaintiff Ivy is entitled to judgment as a matter of law as to Count Two.

## JUDGMENT and ORDER

In accordance with the attached memorandum opinion, it is CONSIDERED, ORDERED and ADJUDGED that defendant's motion for summary judgment as to Count One of the Recast Complaint be and the same is hereby GRANTED. It is CONSIDERED and ORDERED that plaintiffs' motion for summary judgment as to that same count be and the same is hereby DENIED.

It is further CONSIDERED, ORDERED and ADJUDGED that plaintiffs' motion for summary judgment as to Count Two be and the same is hereby GRANTED. Plaintiff Donald Ivy is DIRECTED to submit to the court the amount of back pay and liquidated damages to which he claims entitlement.

Also, the plaintiff is DIRECTED to submit to the court on or before September 30, 1993 a fee petition and bill of costs relating only to the *Ivy* claim. Defendant City of Phenix City is DIRECTED to submit on or before October 15, 1993 anything it wishes to submit in opposition to plaintiff Ivy's fee petition.