**Wayne ARRINGTON, et al., Plaintiffs,**

v.

**CITY OF MACON, Defendant.**

**No. 91–CV–182–1 (WDO).**

United States District Court,
M.D. Georgia,
Macon Division.

Oct. 30, 1997.

Bonnie Kirkland Cole, Robert S. Slocumb, Macon, GA, for plaintiffs.

Loretta L. Pinkston, Susan S. Cole, Charles E. Cox, Jr., Macon, GA, for defendant.

## ORDER

OWENS, District Judge.

The court previously granted plaintiffs' motion for partial summary judgment upon determining that defendant City of Macon had violated the Fair Labor Standards Act ("FLSA" or "Act"), 29 U.S.C. § 201 et seq., by making certain impermissible deductions from the paychecks of employees exempt from overtime pay under 29 U.S.C. § 207(k) (Supp.1997), thereby destroying for the relevant period plaintiffs' exempt status. The court held, however, that the City was entitled to preserve plaintiffs' exempt status by using the "window of correction" provided by 29 C.F.R. § 541.118(a)(6) in order to reimburse any affected employees for impermissible deductions and also by expressly amending the City's personnel policy to reflect that salaried employees are not subject to such deductions from pay.

Now before the court is the City's motion for partial summary judgment on plaintiffs' meal time and on-call claims. The City acknowledges that these issues need not be reached with respect to any plaintiff properly classified as exempt. Because it has been determined that all plaintiffs' exempt status under the Act was destroyed when some of them were suspended for reasons other than violation of safety rules of major significance, plaintiffs' on-call and meal time claims during the relevant period are properly considered.

## I.  Summary judgment standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment may be entered in favor of the movant where there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *See also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48, 106 S.Ct. 2505, 2509–10, 91 L.Ed.2d 202 (1986); *Irby v. Bittick*, 44 F.3d 949, 953 (11th Cir.1995). Under the first element, the issue must be genuine, and the factual dispute must be material to the outcome of the litigation. *Anderson*, 477 U.S. at 248, 106 S.Ct. at 2510. "Materiality" is determined by reference to the substantive law that controls the case. *Id.; Mulhall v. Advance Security, Inc.*, 19 F.3d 586, 590 (11th Cir.), *cert. denied*, 513 U.S. 919, 115 S.Ct. 298, 130 L.Ed.2d 212 (1994). For a question of fact to be "genuine," the party opposing summary judgment " 'must do more than simply show that there is some metaphysical doubt as to the material facts,' " *Irby*, 44 F.3d at 953 (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586–87, 106 S.Ct. 1348, 1355–56, 89 L.Ed.2d 538 (1986))—the evidence must be of such a quality that "a reasonable jury could return a verdict for the nonmoving party.... If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 248, 249–50, 106 S.Ct. at 2510, 2510–11. Only those doubts about facts that are reasonable must be resolved in favor of the nonmovant. *Irby*, 44 F.3d at 953

(citing *Browning v. Peyton,* 918 F.2d 1516, 1520 (11th Cir.1990)).

The second element—that the movant be entitled to judgment as a matter of law—is satisfied where "the nonmoving party has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). Once a party has moved for summary judgment and properly supported its motion, the burden shifts to the nonmovant to create, through the evidentiary forms listed in FED.R.CIV.P. 56(c), genuine issues of material fact necessitating a trial. *Celotex Corp.,* 477 U.S. at 324, 106 S.Ct. at 2553.

## II. *Discussion*

### A. *On–Call Status*

Plaintiffs are thirty-nine police officers employed by the City of Macon who have been subject to being on call for various lengths of time. The City has defined on-call status as a scheduled period when an officer is not working but is available for duty if the need arises. Plaintiffs claim that on-call status is defined by Guideline 212 of the Mayor's Personnel Administrative Guideline, which defines "Stand–By period" as "All time, after normal scheduled work hours and including holidays and weekend days, which falls within a one week calendar period of Sunday through Saturday." A "Stand–By Status Employee" is "an employee who must be readily accessible at all times during the stand-by period." Guideline 212's applicability section provides that this stand-by and call-out pay policy applies to "All permanent full-time employees with the exception of Police Officers, Firefighters and Emergency Management personnel." Therefore the definitions of Guideline 212 do not apply to plaintiffs, and the amount of time each of them is on call must be determined from the proof in the record.

Defendants state that an officer who is on an on-call or standby status must either carry a beeper or advise the radio control room of a phone number where he can be located. The officer is expected to respond to a call within thirty minutes but is otherwise free to do what he wants. If the officer on call cannot be reached, his supervisor will designate someone else to respond to the call or will respond to it himself. Plaintiffs claim that the restrictions as stated by the City are incomplete and that they are subject to additional restrictions which are placed on them either through written policies and guidelines or through verbal instructions by their superiors. They also claim that they are subject to some type of reprimand if they violate any restriction. Plaintiffs dispute the City's assertion that no policy prohibits an officer from going home for a meal break, scheduling personal appointments or errands, or attending City Council meetings during meal breaks and note that Alvin Booker was disciplined for attending a City Council meeting during his meal break. They allege they are subject to the following restrictions during their on-call time.

(a) Must be readily accessible at all times during stand-by period;

(b) Must be available to be reached immediately either by telephone or pager or radio;

(c) Must remain constantly rested and alert during the stand-by period in the event the officer is called into service;

(d) Must notify all dispatchers of their movements and whereabouts at any time they leave their home;

(e) Must be able to respond to a call-out within thirty (30) minutes and be properly dressed and equipped; and

(f) Must remain in a geographical area that would allow the officer to maintain radio or pager or telephone contact, and respond within the required time.

Plaintiffs claim that being on stand-by status has resulted in the following frequency of call-outs and interruptions:

*Detective Division:*

**Crimes Against Persons:** Interruptions average 12 times per week; call-outs average 6 times per week;

**Crimes Against Property:** Interruptions average 10 times per week; call-outs average 1 time per week;

**Crime Lab (Gary Ussery):** Interruptions average 7 times per week; call-outs average 4.5 times per week.

**Intelligence (George Richardson):** Interruptions average 2 times per week; call-outs average 1 time per week;

**Commander (Robert Allen):** Interruptions average 7 times per week; call-outs average 3 times per month;

**Fugitive Squad (Terry Timley):** Interruptions average 5 times per week; call-outs average 2 times per week.

*Patrol Division:*

**Traffic Fatality Unit (Mike Burns):** Interruptions average 4 times per week; call-outs average 3 times per week;

**Officer of the Day:** Interruptions average 1 5 times per week; call-outs average 5 times per week.

Because of the required response time and the geographical limitations placed on them during their on-call status, plaintiffs allege they are unable to carry on most normal and family activities during their personal off-duty time. They specifically state that officers who desire to work second jobs find it difficult and many times impossible to find such work because of these restrictions. Since May of 1988 thirty-one plaintiffs have sought and received approval for off-duty employment. Nevertheless, plaintiffs allege that it is very hard and sometimes impossible to maintain outside employment when they will be subject to call-out by the City.

The City estimates that the on-call detective in the Detective Division receives an average of four calls per week, that one call per month can be handled by telephone and an average of ten per month require the detective to leave his home and come in. According to the City the number of calls to the Crime Lab detective on-call during a seven-day period averages ten per month, and the on-call officer in the Intelligence Unit is rarely called, receiving only from one call per seven-day period to one per month. The City claims that the number of calls to the on-call detective in the Crimes Against Property Division ranges from zero to three in a seven-day period, the number of calls to

the on-call Traffic Fatality Investigator ranges from one per month to six per year, and that the number of after-hours calls to the SWAT team averages two per year. The City submits that the radio room receives a list of who is on call for each division in the police department every month. If such officers are needed after regular hours the radio room dispatches them. In the Detective Division the detective secretary monitors the police radio to keep informed and to receive and communicate information.

The City also emphasizes that even though plaintiffs' exempt status did not require them to be paid overtime for the occasions on which they were called into duty while in an on-call status, the City has in fact compensated them for the additional duty as a benefit to plaintiffs. Although they generally acknowledge that they have been compensated for additional time actually spent working, plaintiffs dispute the contention that they have all been compensated for their additional time. For example, they state that plaintiff Mike Burns, a traffic fatality investigator, has been called out by the City without receiving additional compensation.

Plaintiffs do not deny the City's statement that the radio room dispatches officers, but they claim that this information is incomplete. According to plaintiffs, interruptions and call-outs for those on standby status or meal break may also come from superior officers, the chief of police, the deputy chief of police, majors, officer of the day, secretaries, and other officers needing help, as well as radio dispatchers. Off-duty officers are also required to respond to any citizen's complaint which they may receive. Plaintiffs estimate that one third or less of their interruptions and call-outs come from the radio dispatcher and/or the secretaries and that the dispatchers and secretaries would not be aware of any interruptions or call-outs that do not go through them.

The City submits that many of plaintiffs' fact assertions are either erroneous or are conclusory assertions with insufficient factual underpinnings. In some instances the time records of some of the plaintiffs contradict the statements in their affidavit. For exam-

ple, the City shows that plaintiffs allege that the call-outs for officers in the Detective Division, Crimes Against Persons, average six times per week. However, the time records of four officers in the Crimes Against Persons Division from January 1, 1996, through May 3, 1996, show that plaintiff Wayne Arrington was called back into duty only once for two hours, Lt. Jimmy Barbee has been called out three times for a total of 6.25 hours, Captain Robert Hernandez has been called out a total of seven times, and Lt. David Matthews has been called out three times. Plaintiffs' affidavit contains generalities and estimates as opposed to specific dates and facts relating to each one of the thirty-nine plaintiffs. The City has offered its own estimates which are similar in nature to those produced by plaintiffs. Resolution of the issues presently before the court does not require a precise determination of the exact number of times each plaintiff has been called out or interrupted while on stand-by status or on a meal break. Plaintiffs' version of the disputed facts being in most instances reasonable, the discrepancies between their estimates of occurrences and the City's will be resolved in favor of plaintiffs in considering the City's motion.

■ The determination whether on-call restrictions are so restrictive to require compensation under the FLSA is "a question of fact to be resolved by appropriate findings of the trial court.... Facts may show that the employee was engaged to wait, or they may show that he waited to be engaged." *Skidmore v. Swift & Co.*, 323 U.S. 134, 136–37, 65 S.Ct. 161, 163, 89 L.Ed. 124 (1944). In *Birdwell v. City of Gadsden, Alabama*, 970 F.2d 802 (11th Cir.1992), the Eleventh Circuit utilized the "predominant benefit" test for determining compensability of on-call time of law enforcement officers. The appellate court reversed a jury verdict finding that plaintiffs, who were plain clothes detectives, were entitled to compensation under the Act while in on-call status. The evidence at trial was that the detectives could not leave home unless they left a forwarding number or owned a beeper. The activities of those detectives who did not own beepers were limited: they could not participate in outdoor activities such as fishing or hunting; they

could not leave town, go on vacation, or take compensatory time off; they could not go on outings with their families since the family was required to take two cars on the possibility that the detective could be called away at any minute; and they could not drink alcohol. *Birdwell*, 970 F.2d at 808. Nevertheless, as in the present case, several detectives worked two jobs. No one testified that they were unable to use their time at home as they wished, and they could leave home by leaving a forwarding number or purchasing a beeper. *Id.*

Accepting all these statements as true, the Eleventh Circuit held that the trial court should have granted defendant's motion for a judgment notwithstanding the verdict. The Court concluded that "it is clear that an employee's free time must be severely restricted for off-time to be construed as work time for purposes of the FLSA." *Id.* at 810. The conclusion was reached after reviewing *Bright v. Houston Northwest Medical Center Survivor, Inc.*, 934 F.2d 671 (5th Cir.1991); *Halferty v. Pulse Drug Co., Inc.*, 864 F.2d 1185 (5th Cir.1989); *Boehm v. Kansas City Power and Light Co.*, 868 F.2d 1182 (10th Cir.1989); and *Norton v. Worthen Van Service, Inc.*, 839 F.2d 653 (10th Cir.1988).

In *Bright* the plaintiff was on-call throughout all his off-duty time for a period of eleven months. He could not become intoxicated, was required to be reachable always by beeper, was required to arrive at the hospital within twenty minutes of being called, had no days off, and took no vacations. The court held that although his job was oppressive, his on-call time could not be considered working time under the FLSA. *Bright*, 934 F.2d at 678. In *Halferty*, a telephone dispatcher for a nonemergency ambulance company was paid a flat rate for each night plus a set rate for each ambulance run. *Halferty*, 864 F.2d at 1185. She was restricted to her home from 5 p.m. until 8 a.m. five nights a week but could leave her home so long as the calls were forwarded or if someone answered them for her. The time she spent under these restrictions was held not to be work time which would entitle her to minimum wage or overtime provisions of the FLSA since she could "visit

friends, entertain guests, sleep, watch television, do the laundry, and babysit," while on call and thus was using the time predominantly for her own benefit rather than for her employer's. *Halferty*, 864 F.2d at 1189. In *Boehm*, the plaintiff linemen were required to be on-call twenty-four hours a day during storms and emergencies. They were required to be reachable, and to accept call-outs one out of every three calls or be subject to discipline. *Boehm*, 868 F.2d at 1182. Despite these restrictions, the Tenth Circuit found that the district court should have granted the company's motion for directed verdict because the call-out policy "was not so restrictive that a jury reasonably could conclude that their time was spent predominantly for the employer's benefit." *Id.* at 1185. Finally, in *Norton*, van drivers were required to wait near the company premises during 8– to 10–hour shifts but were not compensated unless they received a call. They were subject to discipline for failure to respond to a call and firing after being disciplined three times. The Tenth Circuit found that because employees had opportunities to pursue their personal interests during their waiting time they were not working and noted that purchase of a beeper would have alleviated some of the restrictions on an employee's time. *Norton*, 839 F.2d at 655–56.

Plaintiffs contend that the fact scenarios in these cases are inapposite and point to cases in which on-call time was held to be compensable. In *Renfro v. City of Emporia*, 948 F.2d 1529 (10th Cir.1991), on-call time was held to be compensable when fire fighters were required to be able to hear their pagers at all times, to respond to every call received, and to report to work within twenty minutes from being paged or be subject to discipline. *Id.* at 1532. The calls were frequent, with a firefighter receiving as many as thirteen calls during an on-call period, or an average of three to five calls per on-call period. *Id.*

In *Cross v. Arkansas Forestry Commission*, 938 F.2d 912 (8th Cir.1991), forestry personnel were on call twenty-four hours a day seven days a week to respond to fire emergencies. The Eighth Circuit found that the facts of that case were unlike typical "on-call" cases in two respects: First, the Arkansas Forestry Commission required the employees to monitor radio transmissions continuously during each work period rather than contacting them by phone or pager, thereby limiting their ability to entertain in their homes, attend social gatherings or other personal pursuits, or even to enjoy common activities such as watching television and reading because of the necessity of devoting their attention to radio transmissions. *Cross*, 938 F.2d at 917. Second, the employees were on call twenty-four hours a day every day of a work period with no respite, unless a supervisor agreed to substitute for a particular employee for a period of time. *Id.* Thus, the Court held that the district court should not have granted summary judgment to the Commission because a reasonable jury could have found that the employees were engaged to wait while on call. *Id.*

■ The restrictions placed on the present plaintiffs during on-call status are comparable to those in *Bright, Halferty, and Boehm* rather than the more onerous restrictions described in *Norton, Renfro and Cross*. Plaintiffs assert that although some of them are on a rotating on-call schedule others are placed on call twenty-four hours a day, seven days a week on all hours they are not on duty. They fail to specify in their response brief the officers subjected to being continually on call. However, a review of the answers to the City's first interrogatories shows that Captain Terry Timley of the Detective Division Fugitive Squad is either on duty or on call twenty-four hours a day, seven days a week and is called in approximately once a week and called on the phone twice a week. Major Brady Fields in the Services Division wears a pager at all times and is on call twenty-four hours a day every day, is called in or called up "often," and never leaves Bibb County except on vacation. Captain Joe Stiles, Commander of the Administrative Division, is on call every day of the year except vacation, wears a pager at all times, and notifies the Chief when he leaves town. Lt. Charles Groover in the Administrative Division is subject to similar restrictions and must notify Lt. Stiles if he is away from the office or out of town. If Lt. Stiles is out of town Groover must be available for the Chief of Police if needed.

There is no indication that the aforementioned officers are subject to frequent calls as were the firefighters in *Renfro* and *Cross* or that they are unable to use their on-call time predominantly for their own benefit. The remaining plaintiffs are subject to being on call for varying amounts of time with varying expectations of actually being called. None of the plaintiffs are subject to the onerous restrictions imposed upon the firefighters in *Renfro* and *Cross*. All plaintiffs have failed to show that their free time is so severely restricted that their on-call time should be construed as work time under the FLSA. *Birdwell,* 970 F.2d at 810. Thus, plaintiffs are not entitled to compensation under the FLSA for their time spent on call.

■ Plaintiffs have generally, but not entirely, agreed with the City's assertion that they have been compensated at their normal rate of pay for the periods of time when they are actually called in to work during on-call status. In instances where plaintiffs are able to provide proper documentation or records to show that they were denied such additional compensation they are entitled to be compensated by the City for those hours. *See Avery v. City of Talladega,* 24 F.3d 1337, 1347 (1994); 29 C.F.R. § 553.221(b) (1996).

### B. Meal Breaks

■ General Order 1.1 5, Section 1.1 0 of the Policies and Procedures for the City of Macon Police Department provides:

> Officers shall be permitted to suspend patrol or other assigned activity, subject to immediate call at all times, for the purpose of having meals during their tours of duty, but only for such a period of time, and at such time and place, as established by departmental procedures.

Plaintiffs are not compensated for the time they are on lunch breaks. They claim entitlement to such compensation in three separate instances: meal breaks missed, partial meal breaks when plaintiffs are called off their meals by the City, and interrupted meal breaks.

Plaintiffs complain they are all subject to the following restrictions during their meal times:

(a) Are subject to immediate call into service at any time during their meal break;

(b) Must abide by the City's dress code during their meal break;

(c) Are subject to interruptions such as telephone or radio calls and inquiries by any dispatcher or superior officer, or any other officer needing assistance;

(d) Are subject to interruptions by inquiries of all kinds from citizens;

(e) Must remain in their team area or within the city limits in the case of the detectives;

(f) Cannot take their meal break at their home if it is outside their geographical restriction or outside the city limits of Macon;

(g) Only two police vehicles are allowed at any one eating establishment at the same time;

(h) Must have a beeper or walkie-talkie and maintain constant radio contact during the meal break;

(i) Must advise supervisor and any dispatcher of their meal break locations.

(j) May not take a meal break during the first two hours and the last two hours of the shift; and

(k) Most personal errands and personal appointments are prohibited due to the above restrictions and the policies of the City.

Plaintiffs claim that these restrictions are imposed on them either through written policies and guidelines or through verbal instructions of their superiors and that any violation by an officer of any of the above requirements results in some type of reprimand. They claim that officers in each division are subject to interruptions or being called off meal break in the following frequencies:

### Detective Division

**Crimes against Persons:** Interruptions daily; called off meal break average 5 times per week; no meal break average 50% of time per week.

**Crimes Against Property:** Interruptions average 10 times per week; called off meal

break average 6 times per week; received no meal break average 2 times per week.

**Crime Lab (Gary Ussery):** Interruptions average 3 times per week; called off meal break average 1 time per week; received no meal break average 1 time per week.

**Intelligence (George Richardson):** Interruptions daily; called off meal break average 1 time per week; received no meal break average more than half the time per week.

**Commander (Robert Allen):** Interruptions average 3 times per week; called off meal break average 2 times per week; received no meal break average 4 times per month.

**Fugitive Squad (Terry Timley):** Interruptions average 2 times per week; called off meal break average 3 times per week; received no meal break average 2 times per week;

### Patrol Division

**Traffic Fatality Unit (Mike Burns):** Interruptions average 3 times per week; called off meal break average 2 times per week; received no meal break average 2 times per week

**Officer of the Day:** Interruptions average 3 or 4 times per week; called off meal break average less than 1 time per week; received no meal break average 1 time per week.

**Traffic:** Interruptions average 1 time per week; called off meal break average 1 time per week; received no meal break average 1 time per week.

### Administrative Division

**Deputy Chief (Willie May):** Interruptions daily; called off meal break average 30% of the time; received no meal break average 25% of the time.

**Commander (Joe Stiles):** Interruptions average 1 time per week; called off meal break no times per week; received no meal break average 1 to 2 times per week;

**Lieutenants (Brenda Davis, Charles Groover, and M.C. Harris):** Interruptions average 5 times per week; called off meal

break average 2 times per week; received no meal break average 1 time per week;

### Services Division

**Major (Brady Fields):** Interruptions average 6 times per month; called off meal break average 2 times per month; received no meal break average 1 time per month.

**Lieutenant (Charles Stone):** Interruptions average 25% of time per week; called off meal break average 1 5% of time per week; received no meal break average 10% of time per week.

The City objects to plaintiffs' offer of average interruptions and call-outs, noting that the statistics are conclusory and that plaintiffs have failed to produce specific indications of how most personal errands and personal appointments are prohibited during meal time. Plaintiffs have also failed to specify the nature of the interruptions and inquiries to which they are subjected at meal time. As it did with respect to the on-call claims, the City shows that a spot check of some of the time records of plaintiffs indicates that plaintiffs' figures are inaccurate. For example, Lt. David Matthews, a detective in the Crimes Against Persons Division, made it a practice to record "no lunch" on his time sheet. He recorded only twelve no lunches for calendar year 1995 rather than no lunch 50 percent of the time, and on seven of those twelve occasions he was actually compensated for all hours from the beginning to end of his shift. As another example, it is noted that plaintiffs' claim that the Crimes Against Persons division receives no meal break 50 percent of the time and that they are called off their meal break for an average of five times per week are inherently contradictory statements.

In *Avery*, 24 F.3d at 1346–47, the Court held that the "predominant benefit" test applied for on-call status claims in *Birdwell v. City of Gadsden*, 970 F.2d at 808, was equally applicable to meal break claims. "Bona fide meal periods" for employees covered by the FLSA is defined by 29 C.F.R. § 785.19 as:

*Bona fide meal periods.* Bona fide meal periods are not worktime.... The employee must be completely relieved from

duty for the purposes of eating regular meals. Ordinarily 30 minutes or more is long enough for a bona fide meal period. A shorter period may be long enough under special conditions. The employee is not relieved if he is required to perform any duties, whether active or inactive, while eating. For example an officer employee who is required to eat at his desk or a factory worker who is required to be at his machine is working while eating.

The preceding is a provision of general applicability. The *Avery* court held that the compensability of meal breaks for 29 U.S.C. § 207(k) law enforcement employees is governed by the somewhat different provisions of 29 C.F.R. § 553.223(b), which states:

> If a public agency elects to use the section 7(k) exemption, the public agency may, in the case of law enforcement personnel, exclude meal time from hours worked on tours of duty of 24 hours or less, provided that the employee is completely relieved from duty during the meal period, and all the other tests in § 785.19 of this title are met. On the other hand, where law enforcement personnel are required to remain on call in barracks or similar quarters, or are engaged in extended surveillance activities (e.g., "stakeouts"), they are not considered to be completely relieved from duty, and any such meal periods would be compensable.

The Court concluded that because § 553.223(b) does not include the "any duties active or passive" language of § 785.19 and because the two sections provide different examples of when employees are not completely relieved from duty, section 7(k) law enforcement personnel must perform a higher level of duty before meal breaks will be compensable. *Avery*, 24 F.3d at 1345. The Eleventh Circuit joined the Seventh and Tenth Circuits in holding that the regulations themselves provide the predominant benefit test, the Tenth Circuit having reached the same conclusion by reliance upon *Skidmore*, 323 U.S. 134, 140, 65 S.Ct. 161, 164. *Avery*, 24 F.3d at 1346 & n. 7.

The officers in *Avery* were free to spend their meal breaks in any way they wished so long as they remained in uniform, left their radios on, and did not leave the jurisdiction. The detectives simply left a phone number where they could be reached in case of an emergency. They were able to return home, stop at the bank, pick up their dry cleaning, or run other personal errands. *Avery*, 24 F.3d at 1347. Consequently, their meal breaks were not compensable. A similar result was reached In *Cloutier v. City of Phenix City*, 834 F.Supp. 366 (M.D.Ala.1993). Police officers in that case were denied compensation for their meal time claims when they were free to leave the police station and drive anywhere they chose, could run errands, eat lunch with friends or family, read a book or magazine, or go to an exercise class as long as they were back at the station at the end of the hour. *Cloutier*, 834 F.Supp. at 371.

Significantly more severe restrictions have been held in other jurisdictions to be noncompensable under the FLSA. The district court in *Cloutier*, relied upon three such cases. In *Lamon v. City of Shawnee*, 972 F.2d 1145 (10th Cir.1992), *cert. denied*, 507 U.S. 972, 113 S.Ct. 1414, 122 L.Ed.2d 785 (1993), the officers were relieved of their patrol duties at lunch but were required to leave a telephone number or to monitor a portable radio and to respond to emergency calls, citizen requests, personnel shortages, and crimes or accidents which occurred near them. They were not permitted to conduct personal errands such as getting haircuts or picking up dry cleaning. The Tenth Circuit ruled that "If during meal periods, a police officer's time and attention are primarily occupied by a private pursuit, presumably the procurement and consumption of food, the officer is completely relieved from duty and is not entitled to compensation under the FLSA." *Lamon*, 972 F.2d at 1157. Similarly, in *Armitage v. City of Emporia*, 982 F.2d 430 (10th Cir.1992), the Court concluded that police officers were not entitled to compensation for lunch breaks in which they were allowed to eat where they chose but could not consume alcohol, were required to carry a pager at all times, and were required to respond to questions from the public. *Armitage*, 982 F.2d at 431. And in *Hill v. United States*, 751 F.2d 810 (6th Cir.1984), a letter

carrier's meal time was held noncompensable even though he was allowed to eat only at certain authorized restaurants, was required to maintain possession of accountable receipts and items, and was required to respond to citizen inquiries. *Hill,* 751 F.2d at 813–14. *See also Henson v. Pulaski County Sheriff Dept.,* 6 F.3d 531, 536 (8th Cir.1993) (meal time held noncompensable when police officers required to obtain clearance before beginning their half hour break, break began upon arrival at destination, officers could change into civilian clothes on department's time before break and go wherever they pleased while on break, officers required to monitor their radios and respond in case of emergency, and officers subject to being approached by members of the public).

█ In this court's view, the restrictions which plaintiffs claim are imposed on them during their lunch hours, including interruptions, do not entitle them to compensation for meal times under the FLSA. There is insufficient evidence to show that the predominant benefit of the lunch hours is for the City or that plaintiffs are unable for the most part to utilize their lunch periods for the intended purpose of eating a meal. With the exception of the interruptions from the public, the restrictions placed upon the plaintiffs, while not identical to those in *Avery* or any of the other cited cases, are not sufficiently different in kind that a reasonable jury could return a finding of compensability under the FLSA. However, as stated *supra* with respect to the on-call issue, plaintiffs are entitled to compensation from the City, assuming proper documentation can be provided, for those occasions on which they are called from their lunch breaks to work or when they receive no lunch at all. *See Avery,* 24 F.3d at 1347, 29 C.F.R. § 553.221(b). In those circumstances the predominant benefit of the scheduled lunch break is for the City rather than for the plaintiffs.

## III. Conclusion

Defendant City of Macon's motion for partial summary judgment on -call and meal time claims is **GRANTED** except to the extent that plaintiffs were actually called in to work during on-call status or that they were called away from the lunch breaks to work or received no lunch at all.

**SO ORDERED.**